935 A.2d 395

Charles HUDSON

v.

**HOUSING AUTHORITY OF BALTIMORE CITY.**

**No. 24, Sept. Term, 2007.**

Court of Appeals of Maryland.

Nov. 7, 2007.

20

Theodosia Saffo of Legal Aid Bureau, Inc., Baltimore, for petitioner.

Jon E. Offley (Jannai C. Goslee of Housing Authority of Baltimore City, Office of Legal Affairs, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

HARRELL, J.

By issuing a Writ of Certiorari, on the petition of Charles Hudson, to the Circuit Court for Baltimore City, we implicitly expressed our desire to consider whether limited pretrial discovery is allowed, under the applicable Maryland Rules, in a "Breach of Lease" (Maryland Code (2003), Real Property Article, § 8–402.1) action brought in the District Court of Maryland. Before we may reach that issue, however, we must confront whether the Circuit Court appropriately entertained, under the common law collateral order doctrine, the interlocutory appeal taken by Hudson's landlord, the Housing Authority of Baltimore City, from the District Court's ruling that limited discovery was permitted. Although we shall conclude that the collateral order doctrine does not justify that interlocutory appeal, as that doctrine is of extremely limited application in the resolution of discovery disputes, given the import of the merits of the certiorari question, we shall address the

substantive issue, albeit as considered dicta. It is our view that Maryland Rule 3–711 [1] does not exclude in "Breach of Lease" actions brought in the District Court the limited discovery allowed under Maryland Rule 3–401(a). [2]

## I.

The material facts are undisputed. Petitioner, Charles Hudson, resides in the Latrobe Housing Development, a subsidized housing project in Baltimore City. On 30 September 2005, the Housing Authority of Baltimore City (HABC), Respondent, which owns and operates more than ten thousand dwelling units in Baltimore City, including the Latrobe Housing Development, received a copy of a police report implicating Hudson in the alleged commission of a crime in his rental unit. The point of departure for the police report was that a suspect (not Hudson) carrying drugs ran into Hudson's dwelling. When police pursued the suspect, they reportedly observed in Hudson's rental unit a large, clear jar of drugs being used as a leg to support a bed. As a result, on 22 May 2006, HABC filed a form "Complaint and Summons Against Tenant in Breach of Lease," under Maryland Code (2003), Real Property Article, § 8–402.1, in the District Court of Maryland, sitting in Baltimore City. The complaint alleged that the above facts constituted the breach of several lease covenants prohibiting illegal and drug-related activities in the dwelling unit.

---

1. Maryland Rule 3–711 (2006), entitled "Landlord–Tenant and Grantee Actions," states:
 Landlord-tenant and grantee actions shall be governed by (1) the procedural provisions of all applicable general statutes, public local laws, and municipal and county ordinances, and (2) unless inconsistent with the applicable laws, the rules of this Title, except that no pretrial discovery under Chapter 400 of this Title shall be permitted in a grantee action, or an action for summary ejectment, wrongful detainer, or distress for rent, or an action involving tenants holding over.

2. Maryland Rule 3–401 (2006), entitled "General Provisions Regarding Discovery," states, in pertinent part:
 (a) Discovery Methods. Except as otherwise provided in this Title, a party may obtain discovery by written interrogatories and, if a written stipulation is filed in the action, by deposition upon oral examination or written questions. The taking and use of a deposition permitted under this Rule shall be in accordance with Chapter 400 of Title 2.

Trial was set for 12 June 2006. On 6 June 2006, Hudson, through counsel, served written interrogatories on HABC seeking the limited discovery afforded in District Court cases under Maryland Rule 3–401(a). The next day, Hudson sought a continuance of the trial to allow time for HABC to respond to the discovery request. A continuance of the trial date to after 18 August 2006 was granted on 12 June.[3] On the same day, HABC filed a motion to strike the interrogatories on the ground that Maryland Rule 3–711 prohibits discovery in summary ejectment actions in the District Court. The court denied HABC's motion, ruling that Rule 3–711 does not apply to "Breach of Lease" cases. On 15 September 2006, the court also denied HABC's effort seeking reconsideration of its ruling having the effect of allowing the discovery initiative by Hudson.

HABC appealed to the Circuit Court for Baltimore City on 25 September 2006 the District Court's interlocutory ruling as to discovery, ostensibly in accordance with Maryland Code, Real Property Article, § 8–402.1(b)(2).[4,5] Specifically, HABC

---

3. The merits trial was later set for 25 August 2006, but then postponed again to 8 September 2006 and later yet to 15 September 2006.

4. Real Property Art., § 8–402.1(b)(2), provides:

 Either party may appeal to the circuit court for the county, within ten days from entry of the judgment. If the tenant (i) files with the District Court an affidavit that the appeal is not taken for delay; (ii) files sufficient bond with one or more securities conditioned upon diligent prosecution of the appeal; (iii) pays all rent in arrears, all court costs in the case; and (iv) pays all losses or damages which the landlord may suffer by reason of the tenant's holding over, the tenant or person in possession of the premises may retain possession until the determination of the appeal. Upon application of either party, the court shall set a day for the hearing of the appeal not less than five nor more than 15 days after the application, and notice of the order for a hearing shall be served on the other party or that party's counsel at least five days before the hearing. If the judgment of the District Court is in favor of the landlord, a warrant shall be issued by the court which hears the appeal to the sheriff, who shall execute the warrant.

5. Upon stipulation of the parties, the District Court stayed the trial on

claimed that the District Court's discovery ruling was immediately appealable under the collateral order doctrine and incorrect as a matter of law. The Circuit Court considered the matter on the record made in the District Court. After oral argument, the Circuit Court ruled that the appeal was taken properly under the collateral order doctrine. The Court further held that Rule 3–711 prohibited discovery in "Breach of Lease" cases in the District Court and, thus, reversed the District Court's ruling and remanded the case for further proceedings.

Hudson successfully petitioned us for a Writ of Certiorari. We shall consider de novo the Circuit Court's allowance of the interlocutory appeal under the collateral order doctrine and its denial of discovery in a "Breach of Lease" case brought in the District Court, both purely legal determinations. *Pickett v. Sears, Roebuck, and Co.*, 365 Md. 67, 77, 775 A.2d 1218, 1223 (2001).

## II.

### A.

We address, first, whether the District Court's allowance of limited discovery, over HABC's protest, was immediately appealable to the Circuit Court under the common law collateral order doctrine. We hold that it was not.

 The general proposition in Maryland is that "to be appealable an order or judgment ordinarily must be final." *Jackson v. State*, 358 Md. 259, 266, 747 A.2d 1199, 1202 (2000). Appellate jurisdiction may not be exercised over a judgment considered interlocutory unless it falls within one of three delineated exceptions. *See Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660, 666 (2005). Appeals from certain types of

---

the merits of the "Breach of Lease" complaint, pending disposition of the appeal.

interlocutory orders specifically are allowed by certain statute; immediate appeals are authorized from actions taken pursuant to Maryland Rule 2–602; and, appeals from interlocutory rulings are allowed under the common law collateral order doctrine. *Id.* The first and second exceptions are not implicated in the present case.

The collateral order doctrine permits a reviewing appellate court to treat as final, without consideration of the procedural posture of a case, a "narrow" class of interlocutory orders in "extraordinary circumstances." *Ehrlich v. Grove,* 396 Md. 550, 561–62, 914 A.2d 783, 791 (2007); *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 591 (2003). We have applied gingerly this doctrine to review actions completely separate from the merits of the litigation based on a "perceived necessity" of immediate appellate review. *Ehrlich,* 396 Md. at 562, 914 A.2d at 791 (quoting *Dawkins v. Baltimore City Police Dep't,* 376 Md. 53, 64, 827 A.2d 115, 121 (2003)). Of greatest import here, however, " '[t]his Court has consistently held that discovery orders, being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case in the trial court. . . .' [G]enerally such orders do not meet the requirements of the collateral order doctrine." *In re Foley,* 373 Md. at 634, 820 A.2d at 591–92 (quoting *Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995)). Only in the special circumstances where a litigant seeks to probe the individual thought process of a high level government official, acting in an administrative or investigatory decisional capacity, have we sanctioned immediate review of a trial court's disposition of a discovery dispute under the collateral order doctrine. *See Ehrlich,* 396 Md. at 572, 914 A.2d at 797 ("[A]n interlocutory appeal is appropriate under these extraordinary circumstances involving discovery orders directed to a high government official."); *Stevens,* 337 Md. at 477–79, 654 A.2d at 879–81; *Pub. Serv. Comm'n v. Patuxent Valley,* 300 Md. 200, 210, 477 A.2d 759, 764 (1984) ("We reiterate, however, that our holding is a narrow one. Thus discovery orders, directed at other than high level government

decision makers, are ordinarily not appealable in accordance with the general rule.").

■ The collateral order doctrine may apply when a decision of the lower court meets four conjunctive and strictly construed elements. *Ehrlich*, 396 Md. at 563, 914 A.2d at 792. If an interlocutory decision "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment," then the collateral order doctrine applies. *Id.*, 914 A.2d at 791. Even were we to assume, for the sake of argument, that the District Court's decision to allow limited discovery in the present "Breach of Lease" case conclusively determined whether the interplay between Maryland Rules 3–401(a) and 3–711 permitted such discovery, and that such a determination resolved an important issue, we nevertheless would conclude that the District Court's discovery ruling met neither the third nor the fourth criterion of an immediately appealable collateral order.

■ Indeed, "[m]ost discovery orders do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead a typical discovery order is aimed at ascertaining critical facts upon which the outcome of the controversy might depend." *Addison v. State*, 173 Md.App. 138, 156, 917 A.2d 1200, 1211 (2007) (quoting *St. Joseph Medical Center, Inc. v. Cardiac Surgery Associates, P.A.*, 392 Md. 75, 87, 896 A.2d 304, 311 (2006); *In re Foley*, 373 Md. at 635, 820 A.2d at 587). Obviously, interrogatories inquiring into the underlying factual grounding of HABC's claim that Hudson breached his lease are critical to the ultimate determination of whether a breach occurred. Thus, the third requirement of an immediately appealable collateral order is not met in this case.

■ Finally, "discovery orders fail to meet the collateral order doctrine's fourth element as they are effectively reviewable on appeal from a final judgment. A party aggrieved by a discovery order and aggrieved by the final judgment may

challenge the discovery ruling on appeal from a final judgment." *Id.* (quoting *St. Joseph Medical Center, Inc.*, 392 Md. at 87, 896 A.2d at 311 (2006); *In re Foley*, 373 Md. at 635, 820 A.2d at 587). "It is a long established principle of appellate procedure, now embodied in Rule 8–131(d), that an appeal from a final judgment ordinarily brings up for appellate review all [other] orders in the case." *B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 132–33, 571 A.2d 1213, 1216 (1990); *accord Stevens*, 337 Md. at 476–77, 654 A.2d at 879 (1995) ("Maryland Rule 8–131(d) provides that, on appeal from an order constituting a final judgment, other orders, even if interlocutory, are generally reviewable by the appellate court."). The rare circumstances occurring in the "high-level, government official exception" explored in *Ehrlich, Stevens*, and *Patuxent Valley*, where requiring disclosure seriously could disrupt administrative governance, do not exist here. We thus hold that the Circuit Court incorrectly applied the collateral order doctrine to endorse its review of the District Court's Order allowing discovery in the underlying "Breach of Lease" case.

## B.

Despite the inappropriate path by which this case reaches us, we are persuaded that the merits are worthy of comment. Maryland Rule 8–131 provides that this Court "may decide . . . an issue if necessary or desirable to guide the trial court or to avoid the expense or delay of another appeal." The record suggests that there is some division among some judges of Maryland's District Court and various of its Circuit Courts concerning the proper application of Maryland Rules 3–401(a) and 3–711 in "Breach of Lease" actions. In addition, given that the HABC's action here was stayed pending disposition of this appeal, our determination of the issue will enable that action to proceed more expeditiously than were we to wait for the issue to arrive at our doorstep after a trial and subsequent appeal.

## 28

## C.

■ "Maryland's discovery rules were deliberately designed to be broad and comprehensive in scope." *Ehrlich v. Grove*, 396 Md. 550, 560, 914 A.2d 783, 790 (2007) (citing *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 13, 174 A.2d 768, 771 (1961)). Broad and comprehensive rules eliminate, "as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to litigation." *Grove*, 396 Md. at 560, 914 A.2d at 790 (quoting *Kelch v. Mass Transit Admin.*, 287 Md. 223, 229, 411 A.2d 449, 453 (1980); *Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126, 137 (1978)).

■ Civil procedure in the District Court of Maryland is governed by Title 3 of the Maryland Rules. Chapter 400 of that Title governs discovery. Maryland Rule 3–401, entitled "General provisions regarding discovery," provides, in pertinent part, that "[e]xcept as otherwise provided in this Title, a party may obtain discovery by written interrogatories and, if a written stipulation is filed in the action, by deposition upon oral examination or written questions." Maryland Rule 3–421(b) clarifies that, "[u]nless the court orders otherwise, a party may serve only one set of not more than 15 interrogatories. . . ." Thus, the rules generally entitle a civil litigant in District Court to limited discovery through 15 interrogatories served upon his, her, or its opponent. Maryland Rule 3–711 provides in pertinent part, however, that "no pretrial discovery under Chapter 400 of this Title shall be permitted in . . . an action for summary ejectment, wrongful detainer, or distress for rent, or an action involving tenants holding over" in District Court. A "Breach of Lease" action is not part of the itemized exclusions in Rule 3–711. Therein lies the tension giving rise to the current dispute.

Relevant defining provisions of the Maryland Code closely track the causes of action described in Maryland Rule 3–711. The Real Property Article, originally enacted by Chapter 12 of the Acts of 1974, consists of 15 Titles. Title 8 of the Article governs landlord-tenant relations. Title 8 is organized into 6 Subtitles. Subtitles 3 and 4 of Title 8 address the actions

mentioned in Maryland Rule 3–711.[6] Subtitle 3, "Distress for Rent," covers the same as named in the Rule. The other actions in Rule 3–711 are covered by Subtitle 4, "Landlord's Remedies Other Than Distraint."[7] Section 8–402, "Holding over," covers the action in Rule 3–711 described as "an action involving tenants holding over." Section 8–402.3, entitled "Wrongful detainer," covers the action in Rule 3–711 described as the same.

Rule 3–711 also prohibits discovery in an "action for summary ejectment." The Real Property Article, however, makes only one mention of this action, contained in § 8–401, "Failure to pay rent." Thus, a summary ejectment action is linked to an action for failure to pay rent.[8] In contrast, Rule 3–711 makes no explicit reference to an action for a "Breach of Lease."

 HABC contends that a plain meaning interpretation of Rule 3–711 demands inclusion of a "Breach of Lease" action within its purview. We conclude the opposite. In applying the plain meaning rule to effectuate the will of the legislature (here, this Court[9]), "we give effect to the statute as it is

---

6. All of the landlord-tenant actions noted in Rule 3–711 also have antecedent common law roots. Distress for rent developed from the common law remedy of the same name. Its history is described in *Universal C.I.T. Credit Corp. v. Cong. Motors, Inc.*, 246 Md. 380, 228 A.2d 463 (1967). The tenant holding over and summary ejectment actions developed from the common law remedy known simply as "ejectment." The history of these actions is described in *Brown v. Housing Opportunities Comm'n*, 350 Md. 570, 714 A.2d 197 (1998). Finally, wrongful detainer evolved from common law forcible entry and detainer. That evolution is described in *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 557 A.2d 965 (1989) and *Empire Properties, LLC v. Hardy*, 386 Md. 628, 873 A.2d 1187 (2005).

7. The landlord remedy of distraint simply refers to an action for distress for rent as addressed in Subtitle 3, "Distress for Rent."

8. In addition, § 9–4 of the Public Local Laws of Baltimore City (2006) refers to summary ejectment. That section is entitled "Summary ejectment action for rent."

9. This Court effectively "legislates" when it adopts rules of practice and procedure. *See Ginnavan v. Silverstone*, 246 Md. 500, 505, 229 A.2d

written." *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395
(2006) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563,
576, 870 A.2d 186, 193 (2005)). The principles of applying a
plain meaning approach include consideration of the doctrine
of *"expressio unius est exclusio alterius"* (the expression of
one thing is the exclusion of another)." *Id.* at 458 n. 17, 903
A.2d at 404 n. 17 (citing *Comptroller of Treasury v. Blanton,*
390 Md. 528, 537–38, 890 A.2d 279, 285 (2006)). This funda-
mental principle of construction, long recognized in Maryland,
when applied to the case at hand, results in our conclusion
that Rule 3–711 includes several forms of actions between
landlords and tenants, but necessarily excludes those brought
under Md.Code, Real Property Article, § 8–402.1, "Breach of
lease," from its ambit.

▆▆▆▆▆▆ Even were we to believe Maryland Rule 3–711 to
be ambiguous in this regard, we do not reach the conclusion
HABC desires because the "legislative" history of the Rule
indicates that the Court clearly intended not to include a
"Breach of Lease" action in the enumeration of actions for
which discovery in the District Court would not be permitted.[10]

---

124, 127 (1967) ("The Maryland Rules of Procedure, within their
authorized scope, are legislative in nature.").

**10.** The Court of Appeals promulgates Rules of Practice and Procedure
by allowance of the Maryland Constitution. Section 18(a) of Article IV
provides that "[t]he Court of Appeals from time to time shall adopt
rules and regulations concerning the practice and procedure in and the
administration of the appellate courts and in the other courts of this
State, which shall have the force of law until rescinded, changed or
modified by the Court of Appeals or otherwise by law." "The basis for
the grant of this rule-making power is the recognition that in order to
provide for the orderly administration of justice reasonable and specific
rules of procedure are necessary." *Kohr v. State,* 40 Md.App. 92, 96,
388 A.2d 1242, 1245 (1978).

Rule 1 of the Internal Operating Rules of the Court of Appeals of
Maryland (2007) requires that "[t]he Court shall conduct all proceed-
ings involving the exercise of its authority under Md. Constitution, Art.
IV, Section 18(a) to adopt or modify rules of Practice and Procedure at
a meeting open to the public." Although this internal operating rule
was adopted in 1992, Maryland Rule 16–801 (formerly Rule 1225),
which explains the promulgation of the Rules, was adopted in 1976.
This Rule explains that "Rules of the Court of Appeals shall be promul-

gated by a Rules Order approved by a majority of the members of the Court of Appeals." Maryland Rule 16–801(a). The process of promulgating the Rules involves a Standing Committee on the Rules of Practice and Procedure, which began its life in 1946 and replaced a predecessor ad hoc Committee on Rules of Practice and Procedure, appointed by the Court in 1940:

> To assist the Court of Appeals in developing rules in the exercise of its rule-making power, the Court has appointed a standing committee on rules of practice and procedure, usually and herein referred to as the "Rules Committee," composed of judges, lawyers and persons familiar with judicial administration appointed for a three year term or at the Court's pleasure. The Court has also appointed a member of the bar to serve as Reporter to the Rules Committee, and from time to time, such assistant or special reporters as may be required to assist the Rules Committee in discharging its assigned responsibilities. Unless otherwise determined by the Court of Appeals, every suggestion for the adoption, amendment, or rescission of a rule shall be referred to the Rules Committee for consideration. The Rules Committee may also consider rules changes on its own initiative, and shall make its recommendations with respect to rules changes to the Court of Appeals by two or more written reports each year, submitted on or before March 31 and September 30. A copy of each report shall be transmitted to the Maryland Register for publication under a thirty day notice of proposed rules changes soliciting public comment.

Maryland Rule 16–801(b).

Absent emergency, Rule proposals and Orders by which the Court adopts Rules are published in the Maryland Register prior to adoption:

> Unless the Court of Appeals determines that some emergency requires the promulgation of a rules change to take effect prior to either of the dates specified in section d of this Rule, a copy of every Rules Order adopting, amending, or rescinding a rule shall be published in the Maryland Register at least thirty days before its effective date under a notice of rules changes, and may also be published in such other publication as the Court of Appeals may direct. A Rules Order adopting or amending a rule in the form previously published in the Maryland Register as a proposed rule change shall cite the number and page of the Maryland Register on which the proposed rules change appears, and in that case the text of the rule adopted or amended need not be re-published with the order of adoption or amendment. If, however, the Court of Appeals should further amend a rule proposed for adoption or amendment during the course of the rule-making process, either in response to comment received, or of its own motion, the full text of the rule or amendment as adopted and showing such further amendment shall be republished with the Rules Order.

> If the Court of Appeals determines that an emergency exists and that a rules change is required to take effect prior to either of the dates specified in section d of this Rule, it shall direct such special publication as it considers appropriate to notify the judiciary, the clerks and members of the bar.

> . . . .

When the Court finds a rule ambiguous, it will endeavor to resolve that ambiguity in light of the legislative intent. *Chow,* 393 Md. at 444, 903 A.2d at 395. "One form of legislative history useful in determining legislative intent is amendments proposed but later rejected by the Legislature or, as in this case, rules of procedure proposed by the Standing Committee on Rules of Practice and Procedure (Rules Committee) later rejected by the Court of Appeals." *State v. Bell,* 351 Md. 709, 721, 720 A.2d 311, 317 (1998). Here we have a similar situation.

The Rules Committee in 1990 proposed an amendment to Rule 3–711 to include among its enumerated actions for which discovery was prohibited "Breach of Lease." 17 Md. Reg. 2729–30 (Nov. 16, 1990). The reporter's notes explain the purpose of the recommendation of the Rules Committee:

An inquiry from the Legal Aid Bureau recently brought to light an omission in the "laundry list" of summary landlord-tenant proceedings wherein pretrial discovery is prohibited. Code, Real Property Article § 8–402.1 provides a summary procedure for repossession of leased premises in the event of a breach of lease by the tenant. (The most common breach, failure to pay rent, is separately covered in § 8–401.)

Rule 3–711 is derived in this regard from former M.D.R. 401 a, enacted in 1971. Section 8–402.1 was enacted in 1978; M.D.R. 401 a was never amended to pick up the reference to the new action. Nor was a reference included when Rule 3–711 was approved in its present form at the November 1983 Rules Committee meeting. Notes from that meeting do indicate that the reason for not allowing discovery in landlord-tenant proceedings generally was because of their

---

Unless the Court of Appeals determines that an emergency exists, and otherwise directs, rules changes shall become effective not earlier than the first day of January or the first day of July, whichever first occurs after the entry and appropriate publication of the order promulgating the rules changes.
Maryland Rule 16–801(c), (d).

summary nature—there would be insufficient time for discovery.

It appears, therefore, that the failure to include breach of lease actions in this list was inadvertent. The Rules Committee recommends that it be included because it is very similar to the other summary proceedings on the list.

*Id.*

The Legal Aid Bureau and the Housing Law Clinic of the University of Baltimore Law School wrote to the Rules Committee of the Court in opposition to the addition of the "Breach of Lease" action to those actions where discovery is prohibited by Rule 3–711. The Legal Aid Bureau urged that "Breach of Lease" actions generally involve complex factual disputes concerning whether the landlord or tenant committed, or failed to commit, acts in compliance with lease covenants. Letter from Stuart R. Cohen, Director of Litigation, Legal Aid Bureau, to Una M. Perez, Reporter of the Rules Committee, Court of Appeals of Maryland (Jan. 3, 1991) (on file with the Court). Ms. Perez noted receipt of these comments in her Memorandum to the Members of the Rules Committee. Memorandum from Una M. Perez, Reporter of the Rules Committee, Court of Appeals of Maryland, to Members of the Rules Committee, Court of Appeals of Maryland (Feb. 11, 1991) (on file with the Court). She further noted there that:

After considering these letters the Property Subcommittee is persuaded that there are valid reasons for leaving breach of lease actions out of the "laundry list" in Rule 3–711, even if the omission was inadvertent in the first instance. Therefore the Subcommittee recommends that the Committee advise the Court of Appeals that the amendment is being withdrawn.

*Id.*

This memorandum is persuasive evidence that the Court chose not to include the "Breach of Lease" action among those contained in Rule 3–711. *See Chambers v. State,* 337 Md. 44, 650 A.2d 727 (1994) (finding persuasive letters written by

Judge John B. Gray, as Chair of the Standing Committee on Rules of Practice and Procedure, upon the purpose and meaning of a Maryland Rule). This Court's unequivocal and unanimous Order, published in Volume 18, Issue 8 of the Maryland Register at 853 (April 19, 1991), stated:

> This Court having considered at open meetings, notice of which was posted as prescribed by law, all those proposed rules changes, together with comments received, . . . it is this 22 day of March, 1991
>
> . . .
>
> ORDERED, that upon recommendation of the Rules Committee, the proposed amendments to Rule 3–711 be deemed withdrawn. . . .

Thus, peering at the scope and intent of Rule 3–711 through the lens of legislative history serves to affirm our plain meaning reading of the Rule. We are *assured* in this case that the Court chose to exclude "Breach of Lease" actions from those summary landlord-tenant actions in the District Court where Maryland Rule 3–711 prohibits discovery.[11]

---

11. HABC, in an effort to equate a "Breach of Lease" action with summary ejectment, a type of action swept up in Rule 3–711's exclusions, contends that "Maryland law recognizes that landlords may institute a summary ejectment action to obtain repossession of their property because of a breach of lease, failure to pay rent, and tenant holding over beyond the lease term." HABC cites three cases in support, *University Plaza Shopping Center, Inc. v. Garcia*, 279 Md. 61, 367 A.2d 957 (1977) (non-payment of rent); *Fingles v. Singer*, 139 Md. 535, 115 A. 795 (1921) (tenant holding over); and *Darnestown Valley–WHM Ltd. P'ship v. McDonald's Corp.*, 102 Md.App. 577, 650 A.2d 1365 (1994) (breach of lease). To bolster further its contention, HABC also relies on *Brown v. Housing Opportunities Comm'n of Montgomery County*, 350 Md. 570, 714 A.2d 197 (1998) for the predication that the General Assembly recognized the "Breach of Lease" action as a kind of summary ejectment action because the latter is a statutory action that expedites the eviction of a tenant when a breach of lease has occurred. We find this logic unconvincing. While a "Breach of Lease" action is a "summary proceeding" in the sense that it was created to expedite court proceedings, *Brown v. Housing Opportunities* explains that the "Breach of Lease" action developed from different stock than other summary actions. Both the failure to pay rent proceeding and the tenant holding over proceeding evolved from the common law action of ejectment, a proceeding used to determine title to property. *Brown,*

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE CITY VACATED; CASE REMANDED TO THAT
COURT WITH DIRECTIONS TO DISMISS THE APPEAL
AND REMAND THE CASE TO THE DISTRICT COURT
FOR FURTHER PROCEEDINGS; COSTS TO BE PAID
BY RESPONDENT.**

---

350 Md. at 581–84, 714 A.2d at 201–04. Because aggrieved landlords were misusing the tenant holding over proceeding by filing "Breach of Lease" actions on forms created for tenant holding over claims, the Legislature deemed it necessary to create a "separate, self-contained District Court procedure by which landlords could recover possession of leased premises based on breaches of covenants other than the payment of rent. . . ." *Id.* at 584, 714 A.2d at 203. This explains the use of the term summary ejectment in two of the petitioner's cited cases, *Garcia* and *Fingles*. This does not legitimate, however, HABC's contention. We note that in no case cited by HABC did this Court hold that summary ejectment is synonymous with any action other than an action for failure to pay rent. Indeed, the only case to speak directly to this question is the present one.