978 A.2d 678

**WASHINGTON SUBURBAN SANITARY COMMISSION, et al.**

v.

**Colleen BOWEN, et al.**

**No. 103, Sept. Term, 2007.**

Court of Appeals of Maryland.

Aug. 26, 2009.

288

James L. Shea (George W. Johnston, Todd J. Horn, Mitchell Y. Mirviss, Venable LLP, Baltimore), on brief, for Petitioners.

Timothy F. Maloney (Veronica Byam Nannis, Koushik Bhattacharya, Joseph, Greenwald & Laake, Greenbelt), on brief, for Respondents.

Argued before BELL, C.J., RAKER *, HARRELL, BATTAGLIA, GREENE, ELDRIDGE, JOHN C. (Retired, Specially Assigned) CATHELL, DALE R. (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

This is another case involving an attempted appeal, under the so-called "collateral order" doctrine, from an interlocutory order rendered by a trial court. Like the result in numerous similar collateral order doctrine cases decided by this Court in recent years, the attempted appeal in this case will be unsuccessful.[1]

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. Other recent cases in this Court rejecting attempted appeals under the collateral order doctrine include, e.g., *Hudson v. Housing Authority*, 402 Md. 18, 25–27, 935 A.2d 395, 399–400 (2007); *St. Mary's County v. Lacer*, 393 Md. 415, 427–431, 903 A.2d 378, 386–387 (2006); *St. Joseph's v. Cardiac Surgery*, 392 Md. 75, 85–88, 896 A.2d 304, 310–311 (2006); *Nnoli v. Nnoli*, 389 Md. 315, 329–330, 884 A.2d 1215, 1223 (2005); *Dawkins v. Baltimore Police*, 376 Md. 53, 827 A.2d 115 (2003); *Theurer v. Farrell*, 376 Md. 65, 827 A.2d 122 (2003); *In re Foley*, 373 Md. 627, 633–636, 820 A.2d 587, 591–593, *cert. denied*, 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003); *Housing Authority v. Smalls*, 369 Md. 224, 798 A.2d 579 (2002); *Orthodox Jewish Council of Baltimore, Inc. v. Abramson*, 368 Md. 1, 791 A.2d 129 (2002); *In re Franklin P.*, 366 Md. 306, 326–328, 783 A.2d 673, 685–686 (2001); *Peck v. DiMario*, 362 Md. 660, 766 A.2d 616 (2001); *Bowers v. Callahan*, 359 Md. 395, 754 A.2d 388 (2000); *Dennis v. Folkenberg*, 354 Md. 412, 731 A.2d 883 (1999); *Pittsburgh Corning v. James*, 353 Md. 657, 660–666, 728 A.2d 210, 211–214 (1999); *Samuels v. Tschechtelin*, 353 Md. 508, 727 A.2d 929 (1999); *Shoemaker v. Smith*, 353 Md. 143, 164–170, 725 A.2d 549, 561–563 (1999). *See also Bunting v. State*, 312 Md. 472, 477–482, 540 A.2d 805, 807–810 (1988).

## I.

The facts relating to the appealability issue in this case are not extensive. Most of the factual detail set forth in the briefs and record extract concern matters which we shall not reach, namely the merits of the plaintiffs' asserted causes of action and the defenses advanced by the defendants.

This litigation began on October 13, 2006, when 16 former merit system employees of the Washington Suburban Sanitary Commission (WSSC) filed a complaint in the Circuit Court for Prince George's County against the WSSC and certain officials of the WSSC.[2] The 16 plaintiffs had been employed in the Information Technology Department of the WSSC. The event giving rise to this lawsuit was the WSSC's "restructuring" of the Information Technology Department, whereby approximately 80 merit system positions in the Department, including the positions held by the 16 plaintiffs, were abolished, and new non-merit system positions were created.[3] The WSSC then terminated the employment of the 16 plaintiffs.

The plaintiffs alleged in the complaint that, "after abolishing the plaintiffs' positions, the WSSC spent millions of dollars on training the new, younger contract workers who replaced the plaintiffs. . . ." The complaint went on to state that "the real purpose behind the abolishment . . . was: (1) for defendant WSSC to avoid paying costly retirement benefits to the plaintiffs who were nearing retirement age; (2) and to unlawfully create a new class of WSSC workers outside of the protections of the merit system, where they could be hired and fired at will without the statutory protections that the WSSC workforce is entitled to under Art. 29, §§ 11–101 *et seq.*"

---

2. Hereafter, for convenience, both the defendant Washington Suburban Sanitary Commission and the individual defendants will be collectively referred to as WSSC.

3. It is not clear from the briefs and record precisely how many positions were abolished. At different places in the briefs and record, the numbers 73, 80 and 81 are used. The discrepancy is not relevant to the issue now before the Court.

The complaint further alleged that most of the plaintiffs "would have been eligible for retirement within the next few years" and that, because of their ages, most of the plaintiffs "have been unable to find comparable employment elsewhere." The plaintiffs also asserted that WSSC violated its own procedures and regulations by not terminating "the least senior employee ... first" and by failing to reemploy the plaintiffs "in preference to any eligible person who is not an employee of the WSSC...."

In addition to claiming that the WSSC violated its own procedures and regulations, the plaintiffs contended that the restructuring violated the merit system provisions applicable to WSSC and contained in Maryland Code (1957, 2003 Repl. Vol., 2008 Supp.), Article 29, § 11–102 *et seq.* The plaintiffs also claimed that the restructuring violated Article 29, § 11–110, relating to layoffs by WSSC, violated the prohibition against age discrimination set forth in Article 29, § 1–107, and violated Article 24 of the Maryland Declaration of Rights. The plaintiffs sought a declaratory judgment and injunctive relief restoring the plaintiffs to their former merit system employment. They did not seek monetary damages.

WSSC on January 3, 2007, filed a motion to dismiss the complaint or, in the alternative, for summary judgment. The principal ground for the motion was that "the lawsuit is barred by the doctrine of absolute legislative immunity." The motion continued:

"Abolishing the ... positions Plaintiffs and others occupied was accomplished through a budgetary process spelled out by the Maryland General Assembly, and approved by WSSC's Commissioners, the Secretary of the Maryland Department of Budget and Management, and by the County Councils of Prince George's and Montgomery Counties. Eliminating public-sector jobs under these circumstances constitutes legislative activity to which the doctrine of absolute legislative immunity squarely applies."

WSSC's motion also contended that the complaint failed to state a claim and that WSSC did not violate its own proce-

dures and regulations. Attached to WSSC's motion were 45 exhibits, consisting of numerous governmental documents, minutes and agenda of meetings, affidavits by government officials, memoranda written by government personnel, and letters between government personnel.

The plaintiffs' opposition to WSSC's motion set forth in detail the reasons underlying the plaintiffs' contentions that the restructuring violated WSSC's own procedures and regulations as well as Article 29 of the Maryland Code and Articles 19 and 24 of the Maryland Declaration of Rights. The plaintiffs' opposition also challenged the applicability of "legislative immunity" under the circumstances of this case. In addition, the plaintiffs disputed WSSC's assertion that the restructuring was approved by the County Councils of Montgomery and Prince George's Counties.

A Circuit Court hearing on WSSC's motion took place on June 1, 2007. After argument by counsel for each side, the Circuit Court orally denied WSSC's motion to dismiss or, in the alternative, for summary judgment. On June 29, 2007, WSSC filed a notice of appeal from the June 1st oral ruling by the Circuit Court. Sometime thereafter, the plaintiffs filed in the Court of Special Appeals a motion to dismiss the interlocutory appeal.

In July 2007, WSSC filed in the Circuit Court a motion to stay all proceedings in the case while the appeal was pending in the Court of Special Appeals. The motion was prompted by earlier interrogatories and document requests served on WSSC. WSSC had not responded to those interrogatories and document requests. WSSC's motion indicated that its purpose was to stay all discovery during the pendency of the appeal. In addition, on July 23, 2007, the plaintiffs sent to the defendants' counsel a notice to take the deposition of one of the individual defendants. The Circuit Court on August 8, 2007, denied the motion for a stay pending appeal. Nevertheless, WSSC continued its refusal to comply with discovery requests, and the plaintiffs on August 22, 2007, filed a motion for sanctions.

On September 4, 2007, the Court of Special Appeals granted the plaintiffs' motion to dismiss WSSC's appeal on the ground that the June 1, 2009, ruling was not a final judgment.

Two days later, on September 6, 2007, WSSC filed a notice of appeal from the Circuit Court's August 8th order denying the motion for a stay pending appeal. On the following day, September 7, 2007, WSSC filed in the Court of Special Appeals a "Motion for Stay Pending Appeal." This motion was denied by the Court of Special Appeals on September 19, 2007.

Next, WSSC on October 15, 2007, filed in this Court a petition for a writ of certiorari, presenting the following two issues:

"Petitioners seek review of the following two questions:

1. Are local government councils and commissions, such as the WSSC, entitled to absolute legislative immunity for a decision to restructure a department pursuant to the legislative budget review process set forth at Art. 29, §§ 11–102 and 11–103?

2. Do the top officials of a local commission have the right to appeal an interlocutory order denying their defense of absolute legislative immunity under the collateral order doctrine?"

This Court granted the certiorari petition on December 13, 2007. *WSSC v. Bowen*, 402 Md. 355, 936 A.2d 852 (2007).

██ We shall answer the certiorari petition's second issue in the negative and hold that the June 1, 2007, interlocutory ruling was not appealable. Consequently, we shall not express any opinion with regard to the first issue in the certiorari petition.[4]

---

4. As previously pointed out, in addition to WSSC's appeal from the June 1, 2007, ruling denying WSSC's motion to dismiss or for summary judgment, WSSC on September 6, 2007, filed a second notice of appeal. This second appeal was from the Circuit Court's August 8, 2007, order denying a stay of Circuit Court proceedings, and particularly a stay of all discovery. The Court of Special Appeals on December 4, 2007, after the certiorari petition was filed in the present case, dismissed the second appeal. The Court of Special Appeals' mandate in the second

## II.

■ The exercise of appellate jurisdiction in Maryland is normally dependent upon a final judgment rendered by the trial court. *See, e.g., Hudson v. Housing Authority,* 402 Md. 18, 24, 935 A.2d 395, 398 (2007)("The general proposition in Maryland is that 'to be appealable an order or judgment ordinarily must be final' "); *County Commissioners for St. Mary's County v. Lacer,* 393 Md. 415, 424, 903 A.2d 378, 383–384 (2006)("Ordinarily, appellate review is available only after the entry of a final judgment where all claims against all

---

appeal was issued on January 3, 2008. WSSC did not file a petition for a writ of certiorari in the second appeal case. Accordingly, the Court of Special Appeals' dismissal of the second appeal finally terminated appellate proceedings with respect to the interlocutory appeal regarding a stay or a postponement of discovery.

Nevertheless, WSSC's briefs in this Court argued that officials of the WSSC should not be required to appear for depositions, relying upon *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 477 A.2d 759 (1984), and *Montgomery County v. Stevens,* 337 Md. 471, 654 A.2d 877 (1995). (WSSC's opening brief at 34, 37–38; WSSC's reply brief at 2, 19–20). Neither *Patuxent Valley* nor *Stevens* involved claims of immunity from suit. Instead they were appeals from interlocutory orders by trial courts, in actions for judicial review of adjudicatory administrative decisions, ordering the administrative decision-makers to appear for depositions concerning their thought processes in rendering the administrative decisions.

WSSC's discovery argument is not properly before us for at least two reasons. *First,* the argument was the subject of the second appeal, from the Circuit Court's order of August 8, 2007, and WSSC did not file a certiorari petition in the second appeal case. The present appellate proceedings are from the Circuit Court's June 1, 2007, ruling, and that ruling did not involve any discovery matter. In fact, at the beginning of the June 1, 2007, hearing, counsel for WSSC stated that no discovery issue was before the Court. *Second,* the discovery issue was not encompassed by the questions presented in WSSC's certiorari petition. For this reason also, the issue is not before us. *See* Maryland Rule 8–131(b); *Garner v. Archers Glen,* 405 Md. 43, 60–61, 949 A.2d 639, 649 (2008); *Boyd v. State,* 399 Md. 457, 473, 924 A.2d 1112, 1121 (2007), and cases there cited. Finally, even if the issue were before us, it would lack merit. The present case is distinguishable from *Patuxent Valley* and *Stevens* on several grounds. *See also Hudson v. Housing Authority, supra,* 402 Md. at 25–26, 935 A.2d at 399; *Ehrlich v. Grove,* 396 Md. 550, 914 A.2d 783 (2007); *St. Mary's County v. Lacer, supra,* 393 Md. at 429–430, 903 A.2d at 386–387; *St. Joseph's v. Cardiac Surgery, supra,* 392 Md. at 87–88, 896 A.2d at 311; *Goodwich v. Nolan,* 343 Md. 130, 141 n. 8, 680 A.2d 1040, 1045 n. 8 (1996).

parties are resolved. * * * The fundamental objective of this principle is 'to prevent piecemeal appeals and to prevent the interruptions of ongoing judicial proceedings' "); *St. Joseph's Medical Center, Inc. v. Cardiac Surgery Associates P.A.,* 392 Md. 75, 84, 896 A.2d 304, 309 (2006)("As this Court has emphasized on numerous occasions, very recently by Judge Raker for the Court in *Nnoli v. Nnoli,* 389 Md. 315, 323, 884 A.2d 1215, 1219 (2005), '[t]he general rule as to appeals is that, subject to a few, limited exceptions, a party may appeal only from a final judgment' ").

The "exceptions" to the final judgment principle were recently summarized in *St. Joseph's v. Cardiac Surgery, supra,* 392 Md. at 84, 896 A.2d at 309:

> "Moreover, under Maryland law, the 'few, limited exceptions' to the final judgment rule number only three. Judge Wilner for the Court in *Salvagno v. Frew,* 388 Md. 605, 615, 881 A.2d 660, 666 (2005), explained:
>
>> '[W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine.' "

*See also St. Mary's County v. Lacer, supra,* 393 Md. at 424–425, 903 A.2d at 383–384.

It is undisputed that the Circuit Court's June 1, 2007, ruling denying WSSC's immunity defense was not a final judgment, was not an appealable interlocutory order under any statute, and was not appealable under Maryland Rule 2–602. The issue, as pointed out in the beginning of this opinion, is whether the ruling was appealable under the collateral order doctrine.

This Court, in numerous opinions, has described and delineated the requirements of the collateral order doctrine.

For example, Judge Harrell for the Court, in *St. Mary's County v. Lacer, supra,* 393 Md. at 428, 903 A.2d at 386, explained the collateral order doctrine as follows:

"This doctrine treats a 'narrow class' of interlocutory orders as final judgments regardless of the posture of the case. *In re Franklin P.,* 366 Md. 306, 326, 783 A.2d 673, 685 (2001); *Harris v. David S. Harris, P.A.,* 310 Md. 310, 315, 529 A.2d 356, 358 (1987). This reprieve from the final judgment requirement, however, is a 'very narrow exception.' " *Pittsburgh Corning v. James,* 353 Md. 657, 660, 728 A.2d 210, 211 (1999).

"The collateral order doctrine permits an appeal from an order that satisfies the following four requirements:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment."

Moreover, the " 'four elements of the test are conjunctive in nature and in order ... to fall within this exception to the ordinary operation of the final judgment requirement, each of the four elements must be met.' " *Ehrlich v. Grove,* 396 Md. 550, 563, 914 A.2d 783, 792 (2007), quoting *In Re Franklin P.,* 366 Md. 306, 327, 783 A.2d 673, 686 (2001).

In *Dawkins v. Baltimore City Police Dept.,* 376 Md. 53, 64, 827 A.2d 115, 121 (2003), we characterized the collateral order doctrine as follows (footnote omitted):

"The collateral order doctrine is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments. The justification for the fiction is a perceived necessity, in 'a very few ... extraordinary situations,' for immediate appellate review."

Time after time, this Court's opinions have emphasized that the collateral order doctrine is extremely narrow and that it is applicable only under extraordinary circumstances. *See, e.g.,*

*Hudson v. Housing Authority, supra,* 402 Md. at 25, 935 A.2d at 399 (The doctrine encompasses "a 'narrow' class of interlocutory orders in 'extraordinary circumstances' "); *St. Joseph's v. Cardiac Surgery, supra,* 392 Md. at 85, 896 A.2d at 310 (The doctrine applies "under extremely limited circumstances"); *Nnoli v. Nnoli, supra,* 389 Md. at 329, 884 A.2d at 1223 ("The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland.  * * *  [It is inapplicable if the] case does not present an extraordinary situation"); *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 591, *cert. denied,* 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003)("[T]he doctrine may be entertained only in extraordinary circumstances").

The interlocutory ruling, from which the appeal in the case at bar was taken, was the Circuit Court's June 1, 2007, oral ruling denying the defendants' claim of immunity from suit. We shall assume *arguendo* that the first three requirements of the collateral order doctrine were satisfied. The issue debated by the parties, and the issue that we shall focus upon, is whether the fourth requirement of the doctrine was met, namely whether the ruling denying the immunity claim would be effectively unreviewable on appeal from a final judgment.

The issue of WSSC's claimed immunity from an adverse judgment would clearly be reviewable on appeal from a final judgment. If a final judgment is entered against WSSC, and if WSSC is actually immune from suit under the circumstances, the judgment will be reversed on appeal and the trial court will be directed to dismiss the action. Consequently, in this respect, the fourth requirement of the collateral order doctrine is obviously not satisfied.

Nonetheless, WSSC argues that one aspect of immunity is to "insulate" the defendants "against the rigors of defending a lawsuit" and that this aspect of "immunity is effectively unreviewable if the appeal must await the entry of final judgment. . . ." (WSSC's opening brief at 32, 33.) This "avoidance of trial" argument is the same argument that has been made in all other cases in this Court involving attempted appeals

from interlocutory trial court orders denying immunity claims. *See Dawkins v. Baltimore Police, supra,* 376 Md. at 60–65, 827 A.2d at 119–122, and cases there cited.

The Court in the *Dawkins* opinion, quoting *Bunting v. State,* 312 Md. 472, 540 A.2d 805 (1988), pointed to the major problem with the "avoidance of trial" contention (*Dawkins,* 376 Md. at 60–61, 827 A.2d at 119):

"The *Bunting* opinion, 312 Md. at 479–480, 540 A.2d at 808, went on to point out that a

'difficulty with the defendant's argument is that numerous "rights" can readily be characterized as entitling a party to avoid trial under some circumstances. For example, the "right" to summary judgment might be characterized as a right not to stand trial unless the opposing party has created a genuine issue of material fact. Similarly, the statute of limitations might be characterized as granting a defendant a right not to be tried out of time. *See Mitchell v. Forsyth,* 472 U.S. 511, 550–551, 105 S.Ct. 2806, 2828–2829, 86 L.Ed.2d 411, 441 (1985) (Brennan, J., concurring in part and dissenting in part). If all "rights" which could be characterized in this manner were treated like the right against double jeopardy, the collateral order doctrine would largely erode the final judgment rule. Consequently, it is important that we narrowly construe the notion of an entitlement not to be sued or prosecuted.'

"The Court in *Bunting* concluded that permitting interlocutory appeals because an order involves the right to avoid trial should be confined to a few extraordinary situations (312 Md. at 481–482, 540 A.2d at 809):

'In sum, the idea that an issue is not effectively reviewable after the termination of the trial because it involves a "right" to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations. Otherwise, as previously indicated, there would be a proliferation of appeals under the collateral order doctrine. This would be flatly inconsistent with the long-

established and sound public policy against piecemeal appeals.'

This Court in *Dawkins* went on to hold as follows (376 Md. at 65, 827 A.2d at 122, emphasis added):

"As a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, *or any other type of immunity*, are not appealable under the Maryland collateral order doctrine. Whether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges as defined in Article IV, § 2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine will have to be determined in any future cases that might arise. *Cf. Mandel v. O'Hara*, 320 Md. 103, 134, 576 A.2d 766, 781 (1990). Interlocutory trial court orders overruling immunity claims by other government officials, employees, departments, agencies, entities, units, or subdivisions, or by private persons or entities, are not appealable under the doctrine."

The *Dawkins* holding reflected several prior decisions by this Court rejecting appeals from interlocutory trial court orders denying immunity claims. *See Housing Authority v. Smalls*, 369 Md. 224, 798 A.2d 579 (2002); *Orthodox Jewish Council v. Abramson*, 368 Md. 1, 791 A.2d 129 (2002); *Peck v. DiMario*, 362 Md. 660, 766 A.2d 616 (2001); *Bowers v. Callahan*, 359 Md. 395, 754 A.2d 388 (2000); *Dennis v. Folkenberg*, 354 Md. 412, 731 A.2d 883 (1999); *Samuels v. Tschechtelin*, 353 Md. 508, 727 A.2d 929 (1999); *Shoemaker v. Smith*, 353 Md. 143, 165–170, 725 A.2d 549, 560–563 (1999). Moreover, *Dawkins* has consistently been cited with approval by this Court's subsequent opinions dealing with the collateral order doctrine. *See, e.g., Hudson v. Housing Authority, supra*, 402 Md. at 25, 935 A.2d at 399; *Ehrlich v. Grove, supra*, 396 Md. at 562–563, 914 A.2d at 791; *St. Joseph's v. Cardiac Surgery, supra*, 392

Md. at 85–86, 896 A.2d at 310; *Nnoli v. Nnoli, supra,* 389 Md. at 329, 884 A.2d at 1223.

The holding in *Dawkins* is dispositive of the present case. The immunity asserted by WSSC certainly falls within the *Dawkins* phrase "any other type of immunity." None of the individual defendants falls within the category of officials whose immunity claims might be within an exception to the principle that interlocutory orders denying immunity are not appealable.

Despite the above-cited cases, WSSC advances essentially two arguments for allowing the present interlocutory appeal.

WSSC argues that *Dawkins* "did *not* include legislative immunity in [the] list" of immunity claims which are not appealable under the Maryland collateral order doctrine and that our cases do not preclude applying the doctrine when officials are "acting in a legislative capacity." (WSSC's opening brief at 35, emphasis in the original). Although *Dawkins* did not expressly delineate legislative immunity, such immunity claims clearly fall within the language in *Dawkins* of "any other type of immunity." Furthermore, the final paragraph of *Dawkins,* setting forth its holding, expressly refers to *Mandel v. O'Hara,* 320 Md. 103, 132–134, 576 A.2d 766, 781 (1990), which involved a claim of *legislative immunity* by the Governor in connection with the veto of legislation. There is no sound basis, in *Dawkins* or in any other decision by this Court, for distinguishing legislative immunity from all other types of immunity with respect to attempted appeals under the collateral order doctrine.

WSSC also argues that *Dawkins,* and other cases in this Court refusing to apply the collateral order doctrine to interlocutory appeals from orders denying immunity, involved "qualified immunity, not absolute ... immunity," and that "[a]bsolute legislative immunity differs significantly from qualified ... immunity, and it deserves greater protection." (WSSC's opening brief at 32, 36). *Dawkins,* 376 Md. at 65, 827 A.2d at 122, however, expressly held that "interlocutory trial court orders rejecting defenses of ... *sovereign immuni-*

*ty* ..., or any other type of immunity, are not appealable under the Maryland collateral order doctrine." (Emphasis added). Moreover, one of the cases relied upon in *Dawkins* was *Samuels v. Tschechtelin, supra,* 353 Md. 508, 727 A.2d 929, reversing *Tschechtelin v. Samuels,* 124 Md.App. 389, 722 A.2d 414 (1999), which involved a claim of sovereign immunity. Sovereign immunity of the State or State Agencies is absolute immunity.[5]

In addition, for purposes of interlocutory appeals from denials of immunity claims, where the issue relates to the fourth requirement of the collateral order doctrine, there is no reason for distinguishing between a valid absolute immunity claim and a valid qualified immunity claim. When a qualified immunity claim is not defeated by malice or some other factor which might defeat qualified immunity, the two types of immunity claims are the same and are reviewable on appeal from an adverse final judgment. If valid, either form of immunity will result in a reversal of the judgment and a direction to dismiss the action. As to the "avoidance of trial" aspect, there is also no difference between a valid absolute immunity defense and a valid qualified immunity defense. One purpose of any type of immunity from suit is to avoid having to stand trial. This same purpose, however, underlies a plethora of pre-trial orders. For this reason, pre-trial orders denying immunity claims are generally not reviewable by interlocutory appeals.

---

**5.** In connection with the argument distinguishing qualified immunity from absolute immunity for purposes of the collateral order doctrine, WSSC cites *Shoemaker v. Smith, supra,* 353 Md. at 166, 725 A.2d at 561, and attributes to *Shoemaker* a "ruling that the collateral order doctrine 'will likely' apply 'when immunity is absolute and is not defeated by malice, gross negligence, or other defense.' " (WSSC's opening brief at 32). The quoted language from *Shoemaker* was this Court's description of a Court of Special Appeals' opinion in another case. Moreover, the portion of *Shoemaker* which is quoted by WSSC related to the third requirement of the collateral order doctrine and not the fourth requirement which involves reviewability of the order on appeal from a final judgment. *Shoemaker* dealt with the fourth requirement later in the opinion, 353 Md. at 168–170, 725 A.2d at 562–563.

In light of *Dawkins* and numerous other decisions by this Court, the Court of Special Appeals correctly dismissed WSSC's appeal.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*