Hotten, J.
We consider whether a party asserting the absolute quasi-judicial privilege and the deliberative process (executive) privilege may properly appeal three orders from the circuit court prior to a final judgment, and whether those privileges prevent the admissibility of certain discovery. Respondents, Dr. Mark Geier (“Dr. Geier”), David Geier (“Mr. Geier”) and Anne Geier (“Ms. Geier”),[1] filed a complaint against Petitioners[2]”), in the Circuit Court for Montgomery County, alleging that Petitioners invaded their privacy by publicizing their private medical information in a cease and desist order that was issued during disciplinary proceedings brought by Petitioners against Dr. Geier and Mr. Geier.
During discovery, the circuit court entered three separate orders that: (1) granted Respondents’ sixth motion for sanctions against Petitioners regarding the disclosure of audio *534 tapes of Petitioners’ deliberations; (2) denied Petitioners’ motion for reconsideration of a default order on liability for a series of discovery failures; and (3) denied Petitioners’ motion for a protective order from Respondents’ sixth motion to compel documents, which required Petitioners to disclose their personal financial information to Respondents. Petitioners appealed all three interlocutory orders, and this Court granted certiorari.
For the reasons that follow, we grant Respondents’ motion to dismiss as it relates to the orders denying Petitioners’ motions for reconsideration and for a protective order; deny Respondents’ motion to dismiss as it relates to the order granting Respondents’ sixth motion for sanctions; reverse and vacate the order granting Respondents’ sixth motion for sanctions; and remand the case to the circuit court for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL BACKGROUND
I. Board’s Administrative Proceedings Against Respondents Mark R. Geier and David Geier
a. Mark Geier
On October 3, 2006, the Board notified Dr. Geier that it had received a complaint against him regarding his use of the drug Lupron[3] to treat autistic children. The complaint alleged that Dr. Geier was: (1) practicing outside of the scope of his expertise and the prevailing standard of care for autism; (2) experimenting on children without a rational scientific theory or the supervision of a qualified review board; and (3) failing *535 to provide appropriate informed consent regarding the potential side effects of Lupron and similar drugs.
On April 27, 2011, the Board summarily suspended Dr. Geier’s right to practice medicine, asserting that the “public health, safety or welfare imperatively required emergency action” due to certain medical practices engaged in by Dr. Geier.[4] On May 16, 2011, the Board formally charged Dr. Geier with violations of the Medical Practice Act, Md. Code (Repl. Vol. 2014), §§ 14-401 et seq. of the Health Occupations Article (“Health Oce.”).
On September 15, 2011 the Board issued amended charges against Dr. Geier for prescribing medicine to family members while his license was suspended. After amending its complaint, the Board charged Dr. Geier with: (1) unprofessional conduct in the practice of medicine; (2) willfully making or filing a false report or record in the practice of medicine; (3) willfully failing to file or record any medical record as required under law; (4) practicing medicine with an unauthorized person or aiding an unauthorized person in the practice of medicine; (5) gross overutilization of health care services; (6) failing to meet standards, as determined by peer review, for the delivery of quality medical care; and (7) failing to keep adequate medical records.
On September 26, 2011, after six days of hearings,[5] an Administrative Law Judge (“ALJ”) issued a proposed decision upholding the summary suspension of Dr. Geier’s license. On *536 March 13, 2012, following an additional five days of hearings, the ALJ issued a 126-page proposed decision, recommending that the charges against Dr. Geier be upheld,[6] and that his license be revoked.
Dr. Geier took exception to the ALJ’s findings, but on August 22, 2012, the Board issued a final decision revoking his license. Dr. Geier petitioned for judicial review, and the Circuit Court for Montgomery County affirmed the Board’s revocation on April 9, 2014. Dr. Geier moved to alter or amend the court’s ruling, but the motion was denied. Dr. Geier then noted an appeal to the Court of Special Appeals, and that Court, in a reported opinion, affirmed the Board’s decision. See Geier v. Md. State Bd. of Physicians, 223 Md.App. 404, 116 A.3d 1026 (2016).
b. David Geier
On May 16, 2011, the Board also charged Dr. Geier’s son, Mr. Geier, for practicing medicine without a license in violation of Health Occ. § 14-601.[7] On March 7, 2012, an ALJ recommended that the charges against Mr. Geier be dismissed. On July 30, 2012, however, the Board rejected the ALJ’s recommendation and many of the judge’s findings, concluding that Mr. Geier had practiced medicine without a license because he diagnosed a patient, determined which blood tests the patient required, and ordered those tests. The Board imposed a $10,000 fine.
Mr. Geier petitioned the Circuit Court for Montgomery County for judicial review of the Board’s findings, and the circuit court affirmed the Board’s decision on April 25, 2014. Mr. Geier then appealed to the Court of Special Appeals, and that Court, in an unreported opinion dated July 31, 2015, also affirmed the Board.
*537 c. The Disclosure of the Respondents Personal Medical Information
On January 25, 2012, during the pendency of both disciplinary proceedings, the Board issued a cease and desist order against Dr. Geier, accusing him of practicing medicine while his license had been summarily suspended. The order, posted to the Board’s website and viewable by the public, specifically alleged that Dr. Geier had written prescriptions for all three Respondents. The order also detailed the Respondents’ confidential medical information, identified the specific medications that Dr. Geier allegedly prescribed to each person, and described the medical conditions that each medication treated.[8]
Petitioners promptly removed the confidential information from the cease and desist order in response to Respondents’ protest. Petitioners also issued an amended cease and desist order that deleted the references to the patients and the medications that Dr. Geier allegedly prescribed for them. In the interim between the initial publication and the Petitioners’ remedial actions, other persons viewed and commented about the Respondents’ confidential medical information, and those comments are still accessible on the internet.
Ultimately, an ALJ rejected the charge that Dr. Geier had written any prescriptions in violation of the summary suspension order issued by Petitioners.
II. Respondents’ Civil Action Against Petitioners
a. The Complaint
On December 12, 2012, while Dr. Geier and Mr. Geier were pursuing judicial review of the Board’s adverse rulings, Respondents filed a three-count complaint in the Circuit Court for Montgomery County against Petitioners. The complaint alleged that by publicizing the January 25th cease and desist *538 order that contained the Respondents’ confidential medical information, Petitioners deprived them of their constitutional right to privacy; violated the Maryland Confidentiality of Medical Records Act, Md. Code (1982, 2009 Repl. Vol.), §§ 4-301 et seq. of the Health General Article; and invaded their privacy by giving unreasonable publicity to private facts. The complaint also alleged that Petitioners “acted with ill will and with the intent to injure [Respondents] by exposing Dr. Geier’s personal medical information and that of his wife and son.” Respondents requested compensatory damages, as well as three million dollars in punitive damages.
Petitioners moved to dismiss the complaint for failure to state a claim upon which relief could be granted, asserting they had absolute quasi-judicial immunity from suit under Ostrzenski v. Seigel, 177 F.3d 245 (4th Cir, 1999). Following a hearing on July 10, 2013, the circuit court dismissed the Confidentiality of Medical Records Act claim, finding that the statute did not create a private cause of action. The circuit court allowed the constitutional and invasion of privacy claims to proceed, finding that the record was inadequate to evaluate the applicability of any immunities at such an early stage of the proceedings.
b. Discovery
Following the circuit court’s ruling that allowed two of Respondents’ claims to proceed, Respondents sought extensive discovery, attempting to uncover evidence demonstrating Petitioners acted out of animosity in publishing the cease and desist letter. Respondents sought information regarding the specific circumstances immediately surrounding the Petitioners’ disclosure of their confidential medical information, as well as documents and testimony that revealed Petitioners’ decisional process in the administrative proceedings against them. Respondents also sought communications between Petitioners and their counsel that related to these proceedings. Following an unsatisfactory response to discovery requests, Respondents filed multiple motions to compel and motions for discovery sanctions against Petitioners between the months of *539 November 2013 and February 2016, which led to numerous hearings in the circuit court, and concurrent interlocutory appeals by Petitioners.
Of import to the issues before this Court are the events that occurred during and after Petitioners’ filed their first interlocutory appeal from the circuit court’s June 17, 2014 discovery order.[9] On August 15, 2014,[10] Respondents filed their fifth motion for sanctions seeking a default judgment as to liability, alleging primarily that Petitioners failed to produce an adequately prepared organizational representative noted as a prepared designee for a 167-topic deposition. Respondents subsequently requested a hearing regarding the fifth motion for sanctions. Also on August 15th, the Court of Special Appeals issued an order staying all discovery in the circuit court pending the outcome of the first interlocutory appeal.
In opposition to Respondents’ fifth motion for sanctions, Petitioners alleged that most of the deposition topics covered information in Respondents’ possession or were not discoverable because they involved issues pending on appeal. Petitioners also noted they appealed the circuit court’s June 17th discovery order denying Petitioners assertions of various privileges, and that Petitioners “should not be sanctioned for *540 declining to allow these protections and privileges to be eviscerated in other discovery proceedings” and allowing Respondents to “frustrate the appellate court’s ability to provide meaningful relief in its resolution” of the issues before it.
Following a hearing on November 13, 2014, the circuit court granted Respondents’ fifth motion for sanctions. On December 16, 2014, the circuit court issued a memorandum opinion that detailed Petitioners’ culpable conduct during discovery, and thereafter, entered a default judgment of liability against Petitioners. The circuit court noted that a trial on damages would be scheduled after Petitioners’ first interlocutory appeal had been resolved.
On December 24, 2014, Petitioners noted a second interlocutory appeal based on the circuit court’s default judgment, which the Court of Special Appeals consolidated with Petitioners’ initial appeal filed on June 26. See Md. Bd. Of Physicians v. Geier, 225 Md.App. 114, 123 A.3d 601 (2015).
c. The Court of Special Appeals’ Decision
The Court of Special Appeals first held that neither order appealed by Petitioners constituted a final judgment. The Court concluded that the collateral order doctrine applied to the June 17th discovery order, allowing the Court to hear Petitioners’ claims regarding that discovery order. See Geier, 225 Md.App. at 129-38, 123 A.3d at 610-16. The collateral order doctrine did not apply to the December 16th order of default on liability, corresponding to Respondents’ fifth motion for sanctions, because the Court concluded that the issues that order addressed were not “collateral” to the merits of the case. Id. at 139-43,123 A.3d at 616-19.
In considering the merits of Petitioners’ claims regarding the June 17th order, the Court held that under Health Occ. § 14-410[11] Dr. John L. Young’s (“Dr. Young”)[12] disciplinary *541 files were not discoverable by Respondents. The Court noted that, under Health Occ. § 14-410, both the Board and Dr. Young had to expressly consent to the discoverability of Dr. Young’s proceedings as parties to the action. Because the Board objected to releasing Dr. Young’s proceedings, they were not discoverable by Respondents in the present action. Id. at 144-47, 123 A.3d at 619-21. The Court also concluded that the circuit court erred in rejecting Petitioners’ claim of executive privilege, because it failed to expressly balance Petitioners’ need for confidentiality against Respondents’ need for disclosure, and the impact of nondisclosure on a fair administration of justice. Id. at 147-52, 123 A.3d at 621-24.
Finally, the Court considered the merits of Petitioners’ claims regarding the allegedly privileged communications between the Board and Joshua Shafer, an investigator for the Board. Although the Court noted that generally an appellate court does not have jurisdiction to consider an interlocutory appeal from a discovery ruling that rejects a claim of attorney-client privilege, the Court still considered the merits because it formed a part of a ruling that the Court had jurisdiction to review. Id. at 153,123 A.3d at 624 (citing Kurstin v. Bromberg Rosenthal LLP, 420 Md. 466, 480, 24 A.3d 88, 96 (2011)). The Court noted that the Guidelines for Administrative Adjudicatory Proceedings (“Guidelines”) have no effect on the confidentiality of communications between Board employees, like Shaffer, and the Board’s attorneys. Id. at 154,123 A.3d at 625. The Court concluded that the circuit court erred in rejecting Petitioners’ claim of privilege on the ground that the Guidelines rendered Shafer a “stranger” to the attorney-client rela *542 tionship between the Board and its attorneys. Id. at 154, 123 A.3d at 625.
The Court remanded the case back to the Circuit Court for Montgomery County for further proceedings consistent with its opinion.
d. The Post-Remand Proceeding in the Circuit Court
On remand, Respondents sought a hearing on their sixth motion for sanctions filed on August 8, 2014,[13] involving Petitioners’ audio recordings on internal deliberations regarding Dr. Geier’s and Mr. Geier’s disciplinary proceedings.
On November 5, 2014, Respondents served their sixth request for production of documents, seeking a variety of financial information from Petitioners, which prompted Petitioners to pursue a protective order, based in substantial part, on their claim of absolute quasi-judicial immunity from suit.
On December 28, 2015, Petitioners also filed a motion for reconsideration of the default liability order and for summary judgment in Petitioners’ favor. Petitioners asserted that in the order of default on liability, the circuit court found the Board, but not the individual Petitioners, had engaged in discovery violations. Petitioners also argued that the Court of Special Appeals narrowed the scope of what discovery should be permitted. Respondents disagreed, and on February 10, 2016, filed a seventh motion for sanctions alleging that Petitioners’ motion for a protective order raising the immunity defense was in bad faith.
On March 24, 2016, the circuit court held a hearing on the parties’ respective motions, and subsequently denied Petitioners’ motion for summary judgment, motion for reconsideration on the default judgment of liability, and motion for a protective order from Respondents’ sixth request for documents. The circuit court found that the General Assembly had enacted a detailed statutory scheme addressing Petitioners’ immu *543 nity from suit in 1976 that has not been repealed.[14] The circuit court concluded that because the statutory scheme remains in effect, Petitioners’ claim of a common law absolute quasi-judicial immunity claim did not apply. On that basis, the circuit court denied Petitioners’ motion for summary judgment.
The circuit court also denied Petitioners’ motion for reconsideration because the circuit court found that, even under the Court of Special Appeals’ mandate, Petitioners failed to provide specific evidence that their deponent was responsive, sufficient for the circuit court to reverse its order. The circuit court also noted that, even after adhering to the Court of Special Appeals’ mandate, Petitioners’ conduct remained “abysmal, abominable, [and] sanctionable.”
Finally, the circuit court granted Respondents’ sixth motion for sanctions. The circuit court found that Petitioners did not assert any privilege in their initial responses to Respondents’ requests for the audiotapes, and the tapes were not included on Petitioners’ privilege logs, so the assertion of privilege was waived. The circuit court also ordered that all of Respondents’ outstanding discovery requests were due by April 22, 2016.
On April 1, 2016, Petitioners noted an interlocutory appeal to the Court of Special Appeals, seeking review of the circuit court’s March 24th orders denying their motions for reconsideration and request for a protective order, and granting Respondents’ sixth motion for sanctions. This Court, sua sponte, granted certiorari, and on April 22, 2016 ordered a stay of the proceedings pending further review.
Additional facts shall be provided, infra, to the extent they prove relevant in addressing the issues presented.
STANDARD OF REVIEW
With respect to discovery rules, it is long settled that circuit court judges “are vested with a reasonable, sound *544 discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse.” Ehrlich v. Grove, 396 Md. 560, 560, 914 A.2d 783, 790 (2007) (quoting E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc., 351 Md. 396, 405, 718 A.2d 1129, 1133-34 (1998)). Thus, the resolution of discovery disputes and the imposition of discovery sanctions are within the circuit court’s sound discretion, and reviewed by this Court only for abuse of discretion. See id.
An abuse of discretion occurs “where no reasonable person would take the view adopted by the [trial] court” or when the court acts “without reference to any guiding principles or rules[,]” or when the ruling under consideration is “clearly against the logic and effect of facts and inferences before the court[ ]” or when the ruling is “violative of fact and logic.” Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc., 195 Md.App. 583, 597, 7 A.3d 160, 168 (2010) (quoting Wilson v. John Crane, Inc., 385 Md. 185, 198-99, 867 A.2d 1077 (2005)). “Generally, the standard is that absent a showing that a court acted in a harsh, unjust, capricious and arbitrary way, [this Court] will not find an abuse of discretion.” Ehrlich, 396 Md. at 561, 914 A.2d at 790 (quoting Dashiell v. Meeks, 396 Md. 149, 178, 913 A.2d 10, 26 (2006)).
DISCUSSION
I. Respondents Motion to Dismiss
In conjunction with filing their brief in this Court, Respondents’ also filed a motion to dismiss this appeal for lack of appellate jurisdiction arguing that none of the three orders before this Court are immediately appealable. We conclude that the orders denying Petitioners’ respective motions for reconsideration and for a protective order are not properly appealable, and therefore, grant Respondents’ motion to dismiss as it relates to those orders. Because we conclude, however, the order granting Respondents’ sixth motion for sanction is immediately reviewable by this Court under the collateral order doctrine, we deny Respondents’ motion to dismiss as it relates to that order.
*545 a. Final Judgment
None of the appealed circuit court’s orders qualify as a final judgment that would grant this Court automatic review of the circuit court’s decisions. Section 12—101(f) of the Courts and Judicial Proceedings Article defines a final judgment as a “judgment, decree, sentence, order, determination, decision or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken.” To constitute a final judgment, a trial court’s ruling “must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding.” Harris v. State, 420 Md. 300, 312, 22 A.3d 886, 893 (2011) (quoting Schuele v. Case Handyman, 412 Md. 555, 565, 989 A.2d 210, 216 (2010)).
Additionally, for a judgment to be final, the ruling must also contain the following three attributes: “(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy!!;] (2) unless the court acts pursuant to Maryland Rule 2-602(b) to direct the entry of a final judgment as to less than all the claims or all the parties, it must adjudicate or complete the adjudication of all claims against all parties; [and] (3) it must be set forth and recorded in accordance with [Maryland] Rule 2-601.” Metro Maint. Sys. S., Inc. v. Milburn, 442 Md. 289, 298, 112 A.3d 429, 436 (2015) (citing Rohrbeck v. Rohrbeck, 318 Md. 28, 41, 566 A.2d 767, 773 (1989).
The record reflects that the circuit court did not intend for any of its orders to be considered a “final disposition of the matter in controversy[.]” See Metro Maint. Sys. S., Inc., 442 Md. at 298, 112 A.3d at 435. The circuit court, after denying Petitioners’ motion for a protective order, ordered that Petitioners had until April 1, 2016 to provide an updated privilege log, and until April 22, 2016 to respond to all of Respondents’ outstanding discovery requests. The circuit court’s scheduling of additional discovery matters clearly indicates that there was no “unqualified, final disposition of the matter in controversy IT Id.
*546 In the absence of a final judgment, appellate review is limited to three exceptions: (1) appeals from interlocutory orders specifically allowed by statute; (2) immediate appeals permitted under Maryland Rule 2-602; and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine. See Salvagno v. Frew, 388 Md. 605, 615, 881 A.2d 660, 666 (2005). The first two exceptions are not implicated in this case.
b. Common Law Collateral Order Doctrine
The common law collateral order doctrine is a well-established but narrow exception to the general rule that appellate review must ordinarily await the entry of a final judgment disposing of all claims against the parties. See Dawkins v. Balt. City Police Dep’t., 376 Md. 53, 58, 827 A.2d 115, 118 (2003). The doctrine is “based upon a judicially created fiction, under which, certain interlocutory orders are considered to be final judgments, even though such orders are clearly not final judgments.” Id. at 64, 827 A.2d at 121. For the doctrine to apply, the interlocutory order must satisfy the following four requirements: (1) the order must conclusively determine the disputed question; (2) the order must resolve an important issue; (3) the order must resolve an issue that is completely separate from the merits of the action; and (4) the issue would be effectively unreviewable if the appeal had to await the entry of a final judgment. Id. at 58, 827 A.2d at 118. These four requirements are strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances. Id. at 59, 827 A.2d at 118.
In Dawkins this Court made clear that, as “a general rule, interlocutory [ ] orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity are not appealable under the [ ] collateral order doctrine.” Id. at 65, 827 A.2d at 122. Specifically, we held,
[wjhether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney *547 General, Speaker of the House, President of the Senate, or judges as defined in Article IV, § 2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine will have to be determined in any future cases that might arise. Interlocutory trial court orders overruling immunity claims by other government officials, employees, departments, agencies, entities, units, or subdivisions, or by private persons or entities, are not appealable under this doctrine.
Id. (citations omitted). After Dawkins, this Court and the Court of Special Appeals clarified that interlocutory orders denying absolute judicial immunity and interlocutory orders denying executive privilege to “high level decision makers” are immediately appealable under the collateral order doctrine. See, e.g., Ehrlich, 396 Md. at 572, 914 A.2d at 797 (concluding that an interlocutory appeal was appropriate under the “extraordinary circumstances involving discovery orders directed to a high government official.”); State v. Keller-Bee, 224 Md.App. 1, 6, 119 A.3d 80, 83 (2015), aff'd, 448 Md. 300, 138 A.3d 1253 (2016) (concluding that, under Dawkins, the trial court’s denial of the State’s motion to dismiss was immediately appealable under the collateral order doctrine because Article IV judges, and their clerks, are entitled to immediate appellate review of the denial of their judicial immunity).
1. Order Granting Respondents’ Sixth Motion for Sanctions
We hold that the circuit court’s order granting Respondents’ sixth motion for sanctions is properly appealable because it satisfies the narrow exception allowing discovery orders denying “high level decision makers” their executive privilege to be immediately appealable under the collateral order doctrine.
i. Order Granting Motion for Discovery Sanctions is a “Discovery Order”
An order granting discovery sanctions qualifies as a “discovery order” for the purposes of determining the appeala- *548 bility of an order denying executive privilege under the collateral order doctrine. Maryland Rule 2-433 governs a trial judge’s ability to enter orders when there are failures of discovery by one or both of the parties. Specifically, Maryland Rule 2-433(a)(3) authorizes a trial judge to enter “a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party.”
Respondents argue that “courts have consistently held that orders granting discovery sanctions against a party are not immediately appealable under the collateral order doctrine.” Respondents rely solely on Newman v. Reilly, a case that did not address sanctions within the discovery context. 314 Md. 364, 550 A.2d 959 (1988). Rather, the Newman court considered sanctions authorized by Cts. & Jud. Proc. § 3-2A-07(a) and Maryland Rule 1-341. See id. at 376-82, 550 A.2d at 965-68.[15] In Newman, this Court held that “a sanctions order against a party to the underlying litigation is not immediately appealable, in advance of final judgment on the merits of the underlying action, under the collateral order doctrine.” Newman, 314 Md. at 385, 550 A.2d at 969 (citing Yamaner v. Orkin, 310 Md. 321, 326, 529 A.2d 361, 364 (1987)). This Court determined that the third prong for the collateral order doctrine test was not satisfied because “an application for sanctions” is not “a claim so distinct from the underlying lawsuit that the parties would be realigned depending on who is *549 claiming, and who is defending against, sanctions.” Id. In the context of discovery sanctions, the issues the circuit court determines in deciding whether sanctions are appropriate are sufficiently separate from the merits of the underlying action. We conclude therefore, that Newman is not controlling in this case, and that an order for discovery sanctions is considered a “discovery order” for the purposes of denying a “high level decision maker” his or her executive privilege.
ii. Order Granting Respondents’ Sixth Motion for Sanctions is Immediately Appealable
This Court has consistently held that discovery orders, ordinarily, are not appealable prior to a final judgment terminating the case in the trial court. Montgomery County v. Stevens, 337 Md. 471, 477, 654 A.2d 877, 880 (1995) (citing Dep’t of Soc. Serv. v. Stein, 328 Md. 1, 7, 18, 612 A.2d 880, 883, 888 (1992); Pub. Serv. Comm’n v. Patuxent Valley, 300 Md. 200, 207, 477 A.2d 759, 763 (1984)). A narrow exception exists when a “high level decision maker” appeals a discovery order that denies their assertion of executive privilege. See Stevens, 337 Md. at 477, 654 A.2d at 880; see also Patuxent Valley, 300 Md. at 210, 477 A.2d at 764 (“[Discovery orders, directed at other than high level government decision makers, are ordinarily not appealable .... ”). In both Stevens and Patuxent Valley, we determined that the discovery orders compelling a state actor to appear for a deposition were immediately ap-pealable. In both cases, the four-part collateral order doctrine test was satisfied because: (1) the orders conclusively required the appellant to take a deposition; (2) the orders resolved an important issue because they dealt with the potentially great harm to the public by the “disruption of the governmental process” that can be caused by discovery into the decision making processes of a high level government official; (3) the issue as to whether the depositions were appropriate was distinct from the merits of the action for judicial review; and (4) the issue would become effectively unreviewable later because the harm would occur when the depositions were taken, and there would be no effective reme *550 dy available thereafter. Stevens, 337 Md. at 479-80, 654 A.2d at 881; Patuxent Valley, 300 Md. at 206-07, 477 A.2d at 762-73.
Additionally, despite the narrowing language contained in Dawkins, swpra, this Court, relying on our decisions in Stevens and Patuxent Valley, continues to recognize that discovery orders may be immediately appealed under the collateral order doctrine when those orders seek to probe the individual thought processes of a high level government official acting in an administrative or investigatory decisional capacity. See Hudson v. Hous. Auth. of Balt. City, 402 Md. 18, 25, 935 A.2d 395, 399 (2007); see also Ehrlich, 396 Md. at 572, 914 A.2d at 797 (recognizing that an interlocutory appeal was appropriate under the “extraordinary circumstances involving discovery orders directed to a high government official.”). While the Hudson Court ultimately concluded that the collateral order doctrine did not apply under the facts presented, we acknowledged that if the four requirements for the collateral order doctrine are satisfied, then a discovery order that seeks to probe a high level government official’s mental processes acting in his or her administrative or decisional capacity, is immediately appealable. Hudson, 402 Md. at 24-27, 935 A.2d at 398-400.
We conclude that Petitioners are considered “high level decision makers” and the denial of their assertion of executive privilege through the circuit court’s grant of Respondents’ sixth motion for sanctions is immediately reviewable by this Court. In considering what constitutes a “high level decision maker” for the appealability of orders denying executive privilege, this Court has held that executive decision making bodies have the ability to appeal orders denying their executive privilege. See Stevens, 337 Md. at 479-80, 654 A,2d at 881 (holding that a discovery order requiring the Chief of Police for Montgomery County to be deposed was immediately ap-pealable under the collateral order doctrine because the Chief was a “high level government decision-maker.”); Patuxent Valley, 300 Md. at 206-07, 477 A.2d at 762-63 (determining *551 that a discovery order requiring individual commissioners at the Public Service Commission to be deposed satisfied the collateral order doctrine because the members were “high level government decision-makers.”); Stein, 328 Md. at 23, 612 A.2d at 891 (1992) (concluding that “[a]lthough the director of the Baltimore City Department of Social Services is not so high an official as the President of the United States, he or she is nevertheless on a par with the individual Public Service Commissioners” who were the Petitioners in Patuxent Valley).
Petitioners fall within this category of high level executive decision makers because members of the Board are appointed by the Governor, with the advice of the Secretary of the Department of Health and Mental Hygiene (“DHMH”), and the advice and consent of the Senate, similarly to commissioners in the Public Service Commission. Cf Health Occ. § 14-202(a)(1), with Public Utilities Article § 2-102(a) (“The [Public Service] Commission consists of five commissioners, appointed by the Governor with the advice and consent of the Senate.”). The General Assembly has also delegated to the Board a variety of powers that make it the functional equivalent of a high level executive body. See, e.g., Health Occ. § 14-205(a)(l) (granting the Board the power to “[e]nforce [Title 14] and Title 15 in [the Health Occupations Article.]”); Health Occ. § 14-205(a)(5) (The Board “[o]versee[s:] (i) [t]he licensing requirements for physicians and the allied health professionals; and (ii) [t]he issuance and renewal of licenses[.]”); and Health Occ. § 14-205(a)(8) (“[d]evelop[ing] and implement[ing] methods to: (i) [a]ssess and improve licensee practices; and (ii) [e]nsure the ongoing competence of licensees[.]”).
This case is closely analogous to the facts in both Stevens and Patuxent Valley. Respondents are seeking to obtain discovery that delves into the Board’s decision making process. As in both Stevens and Patuxent Valley, we conclude that this case also satisfies the requirements of the collateral order doctrine. First, the circuit court’s order conclusively determined that Petitioners must disclose their pre-decisional deliberations by submitting the audiotapes to Respondents by April *552 22, 2016. Second, like in Stevens and Patuxent Valley, this issue is important because of the “potentially great harm to the public by the ‘disruption of the governmental process’ that can be caused by discovery into the decision making process[ ]” of a high level executive decision maker. Stevens, 337 Md. at 479, 654 A.2d at 881; Patuxent Valley, 300 Md. at 206-07, 477 A.2d at 762. Third, the issue in this case concerning Petitioners’ deliberative process (executive) privilege is distinct from the merits of Respondents’ action seeking damages for an alleged invasion of their privacy. See, e.g., Ehrlich, 396 Md. at 572, 914 A.2d at 797 (concluding that “the propriety of a potential intrusion on [executive] privilege[ ] has nothing to do with the merits of [the plaintiffs] wrongful termination claim.”). Fourth, the discovery order will be effectively unre-viewable on an appeal from a final judgment because the privilege’s protection would be irretrievably lost once Respondents’ gain access to the individual decisional thought processes of the Petitioners. See Patuxent Valley, 300 Md. at 207, 477 A.2d at 763. Additionally, as this Court noted in Patuxent Valley, “[r]egardless of the outcome of the trial, the disruption to the administrative process, caused by placing the officials under pretrial scrutiny, is incurred at the first instance. ... [I]t would be impossible to cure the harm done” to Petitioners once the audiotapes are given to Respondents. Id.
The order granting Respondents’ sixth motion for sanctions is a discovery order denying a high level executive decision maker their executive privilege. Accordingly, this Court has the authority to consider the merits of Petitioners’ assertion of executive privilege as applied to the audiotapes of their pre-decisional process.
2. Orders Denying Petitioners’ Motion for Reconsideration as to Default Liability and Motion for Protective Order
The circuit court’s order denying Petitioners’ motions for reconsideration and for a protective order are not immediately appealable to this Court. While we may have jurisdiction over one interlocutory order under the collateral order doc *553 trine, it does not give us the authority to consider other interlocutory orders that are not independently appealable.
Petitioners conceded before the Court of Special Appeals that a party cannot immediately appeal from an order of default on liability. See Geier, 225 Md.App. at 140, 123 A.3d at 616. Petitioners advance the same argument to this Court— that because we have standing to hear their appeal regarding the denial of their executive privilege, this Court has supplementary standing to consider their claims regarding the denial of their quasi-judicial immunity in the orders denying their motions for reconsideration and for a protective order.
As the Court of Special Appeals noted, Maryland Rule 8-131(d) states that “[o]n appeal from a final judgment, an interlocutory order previously entered in the action is open to review by the Court unless an appeal has previously been taken from that order and decided on the merits by the Court.” (emphasis added). As Judge Charles E. Moylan, Jr. observed in Banashak v. Wittstadt, “[t]here is scant authority on the question of appellate piggybacking[.]” 167 Md.App. 627, 670, 893 A.2d 1236, 1261 (2006). We have not precisely addressed the issue of whether an order that is appealable as a final judgment allows other orders, otherwise not appealable, to be heard by an appellate court. As Judge Moylan noted, the Court of Special Appeals has repeatedly held that “the appeal-ability of each separate issue must be analyzed in a vacuum and that there are no two-for-the-price-of-one bargains on the appellate docket.” Id. at 671, 893 A.2d at 1261; see also Williams v. State, 17 Md.App. 110, 299 A.2d 878 (1973), overruled on other grounds by Stewart v. State, 282 Md. 657, 386 A.2d 1206 (1978) (holding that an order denying a challenge to an array cannot be converted into an appealable order simply because it is joined with an appeal of an interlocutory order that is appealable).
We concluded, supra, that none of the orders appealed by Petitioners constitute a final order as defined in Cts. & Jud. Proc. § 12-101(f). Instead, we determined that the order granting Respondents’ sixth motion for sanctions is immediately appealable because it satisfied the four-part collateral *554 order doctrine test. An order that satisfies the collateral order doctrine is not a final judgment, but rather a legal fiction that, under narrow circumstances, allows this Court to consider orders that would otherwise not be appealable at the time they are entered. See Ehrlich, 396 Md. at 662, 914 A.2d at 791 (quoting Dawkins, 376 Md. at 63, 827 A.2d at 121); see also Snowden v. Balt. Gas & Elec. Co., 300 Md. 555, 560 n. 2, 479 A.2d 1329, 1331 n. 2 (1984). The collateral order doctrine is only applicable in narrow and extraordinary circumstances. See Ehrlich, 396 Md. at 562, 914 A.2d at 791 (referring to collateral doctrine orders as a “narrow class of orders!,]” and as a doctrine that is applicable only “in a very few ... extraordinary situations”); see also Dawkins, 376 Md. at 68-59, 827 A.2d at 118 (noting that the collateral order doctrine “is a very limited exception to the principle that only final judgments terminating the case in the trial court are appeal-able,” and that the requirements for the collateral order doctrine are “strictly applied” and “entertained only in extraordinary circumstances.”) (citations omitted); Stevens, 337 Md. at 477, 654 A.2d at 880 (recognizing that the collateral order doctrine applies to “a narrow class of orders ... which are offshoots of the principal litigation in which they are issued and which are immediately appealable as ‘final judgments’ without regard to the posture of the case.”) (citations omitted).
As the Court of Special Appeals explained, “in a permissible, interlocutory appeal under the collateral order doctrine, it would make no sense to allow the parties to contest every other order in the case as though there had been a conventional final judgment.” Geier, 225 Md.App. at 141, 123 A.3d at 617. Further, the Court concluded that it “would be absurd to say that, in an appeal that is permissible only if the subject matter is ‘completely separate from the merits of the action,’ the appellate court may proceed to consider and decide every interlocutory ruling pertaining to the merits of the case.” Id. We agree with the Court of Special Appeals’ assessment that due to the narrow purpose of the collateral order doctrine, orders that do not independently *555 satisfy the four-part test may not be appealed by “piggybacking” onto another interlocutory order that does satisfy the test. Therefore, the two additional orders are not properly before this Court.
i. Order denying Petitioners’ Motion for Reconsideration for Default as to Liability is Not Immediately Appealable
It is well-established that an order of default is not an “unqualified, final disposition of the matter” because an assessment of damages is still required. Franklin Credit Mgmt. Corp. v. Nefflen, 436 Md. 300, 321, 81 A.3d 441, 453 (2013) see also Curry v. Hillcrest Clinic, Inc., 337 Md. 412, 425-27, 653 A.2d 934, 940-41 (1995) (holding this Court’s decision in Banegura v. Taylor, see infra, was dispositive in concluding that there is no final judgment in an order for default until damages have been assessed); Banegura v. Taylor, 312 Md. 609, 618, 541 A.2d 969, 973 (1988) (holding that an entry of an order of default, leaving damages open for a future trial, was not a final judgment, and could not be immediately appealed); Adams v. Mallory, 308 Md. 453, 461, 520 A.2d 371, 375 (1987) (concluding that an order entering a judgment default of liability that did not determine any relief was not a final judgment). Additionally, this Court in Banegura concluded that the denial of the defendant’s motion to strike the default order was interlocutory and not appealable because it did not dispose of the entire claim. Banegura, 312 Md. at 618, 541 A.2d at 973-74, The order denying Petitioners’ motion for reconsideration for default liability is central to the merits of the action, and therefore, fails the third factor of the collateral order doctrine test.
For the foregoing reasons, we decline to review the order because it is neither a final judgment nor does it satisfy the collateral order doctrine.
ii. Order Denying Petitioners’ Motion for Protective Order is Not Immediately Appealable
The circuit court’s denial of Petitioners’ motion for a protective order from Respondent’s sixth motion to compel *556 documents is not properly appealable under the collateral order doctrine.
After creating the general rule in Dawkins, see supra, we declined to determine “[w]hether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges as defined in Article IV § 2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine....” Dawkins, 376 Md. at 65, 827 A.2d at 122 (emphasis added). This Court purposefully left open the possibility that in cases where privilege is denied to one of the specified positions above, an appellate court may have the authority to consider the interlocutory order denying the privilege under the collateral order doctrine.
As Dawkins made clear “[i]nterlocutory trial orders overruling immunity claims by... agencies ... are not appeal-able under this doctrine.” Id. at 65, 827 A.2d at 122. Additionally, this Court concluded that only judges defined by Article IV, § 2 in the Maryland Constitution are eligible for the exception to the rule. Article IV, § 2 states:
The Judges of all of the said Courts shall be citizens of the State of Maryland, and qualified voters under this Constitution, and shall have resided therein not less than five years, and not less than six months next preceding their election, or appointment, as the case may be, in the city, county, district, judicial circuit, intermediate appellate judicial circuit or appellate circuit for which they may be, respectively, elected or appointed. They shall be not less than thirty years of age at the time of their election or appointment, and shall be selected from those who have been admitted to practice Law in this State, and who are most distinguished for integrity, wisdom and sound legal knowledge.
Md. Const. Art. IV, § 2. The Health Occupations Article states, “[t]he Board [of Physicians] shall consist of 22 members appointed by the Governor with the advice of the Secretary [of DHMH] and the advice and consent of the Senate.” *557 Health Occ. § 14-202(a)(l). The General Assembly did not intend for Petitioners to be considered Article TV judges, but rather as a quasi-judicial body within an administrative agency that has powers independent of the Maryland judiciary. The language in Dawkins is dispositive as it relates to the absolute judicial privilege, and we therefore decline to consider the four requirements of the collateral order doctrine.[16]
For the foregoing reasons, we decline to review the order because it is neither a final judgment nor does it satisfy the collateral order doctrine.
c. Waiver
As noted, supra, we review discovery matters under an abuse of discretion standard. See Ehrlich, 396 Md. at 560, 914 A.2d at 790 (quoting E.I. du Pont de. Nemours & Co., 351 Md. at 405, 718 A.2d at 1133-34). Specifically, we review a trial court’s decision regarding discovery disputes
[fjor the soundness and reasonableness with which the discretion was exercised. In making that evaluation, the reviewing court must defer to the trial court. The necessity for doing so is inherent in the nature of judicial discretion. The exercise of judicial discretion ordinarily involves a series of judgment calls, not simply the ultimate one, but also those on which the ultimate one depends. Where it is alleged that there has been a failure of discovery, in exercising its discretion and as a predicated to determining the propriety of imposing a sanction and, if so, which one, the trial court must find facts. Until it has determined what the *558 significance of the offending party’s actions is and their impact under the circumstances, the court is not in a position to make any decision concerning sanctions. Because it will not have defined, and, so, will not have explored the available choices, the court simply could not exercise any discretion.
N. River Ins. Co. v. Mayor & City Council of Balt., 343 Md. 34, 87-88, 680 A.2d 480, 507 (1996). Additionally, “[i]t is now well-settled that, consistent with the notion that the decision to impose sanctions is within its sound discretion, the power of trial courts to impose sanctions is not dependent on any requirement that they find that the defaulting party acted willfully or contumaciously.” Id. at 86, 680 A.2d at 506.
In the case at bar, the following colloquy took place during the trial court’s consideration of Respondents’ Sixth Motion for Sanctions:
[RESPONDENTS’ COUNSEL]: Your Honor, the last thing on my list is the plaintiffs’ sixth motion for sanctions which has been pending since August 8, 2014, and that’s going way back. But the Court will remember that we asked for basically documents reflecting communications among the Board, Board members about the [Respondents]. That was the seventh request set out in the first set of document requests that was served on the [Petitioners] on August 1, 2013. That matter went to hearing. The Court took up the objections that were asserted by the defendants in November of 2013 and ruled essentially that the document responses should be produced, especially the request we’re concerned about here in No. 7.
THE COURT: Okay.
[RESPONDENTS’ COUNSEL]: Somewhat fortuitously, on a couple of other occasions we sent out document requests, notably the third and fifth request, that also contained requests that would have consumed and brought to the [Petitioners’] attention these audiotapes where they record your deliberations.
THE COURT: Okay.
*559 [RESPONDENTS’ COUNSEL]: There was no objection asserted based on deliberate privilege in response to Request No. 7 way back in September of 2013. The Court ordered them to produce responsive documents, and we got some documents eventually by, by June of 2014.1 got a call from Mr. [Gozdor] telling me I finally had all the documents responsive to our August 2013 request, but it wasn’t until we took Ms. Hurley’s deposition in July of 2014 that we found out about the audio tapes.
And so it was, it came to our surprise to learn that these tapes recorded deliberations where the Geiers were discussed. We asked for those immediately, moved for sanctions. That motion got filed in August 2014. And then because of the pendency of the interlocutory appeal, we, this was never heard. But it’s a pretty simple issue. The, any objection that may have been asserted about those tapes is waived. There was no objection. These tapes were hidden and, by the way, it’s important to know that after I found out about the existence of the tapes, I began to ask individual Board members at their depositions, did you know about the tapes? I knew about the tapes. Invariably, they knew about the tapes. It’s just no one went to get the tapes to produce them in response to our 1-year-old discovery. And so that’s the basis for the sixth motion for sanctions.
THE COURT: Thank you, sir. Counsel.
[PETITIONERS’ COUNSEL]: Your Honor, the plaintiffs are seeking audio recordings of the deliberative privilege of the Board.
THE COURT: You didn’t lodge a timely objection. Not you, but your predecessors. There’s no timely objection.
[PETITIONERS’ COUNSEL]: Well, the, the—
THE COURT: They asked for the information, you didn’t make an objection based on any of this privileged stuff, I granted the motion. How many do overs does the Attorney General think it gets? You didn’t—did you make a privilege objection—
[PETITIONERS’ COUNSEL]: Well—
*560 THE COURT: —at the time?
[PETITIONERS’ COUNSEL]: —they didn’t know they had them at the time that the discovery was served.
THE COURT: Well, when you—
[PETITIONERS’ COUNSEL]: It was found according to Kristin—
THE COURT: —learned, when they sort of popped up, did you promptly make an objection? Did you amend your response and say, oops, we need to include the objection and here’s the log? Did you do that? In other words, at any time after you say you learned about the tapes, did you amend your prior objections to object based on any relevant privilege?
[PETITIONERS’ COUNSEL]: I’m not sure if it was, if it was, if the discovery response was amended.
THE COURT: So you didn’t raise the objections? Waived. What’s complicated about that? It may very well be that this stuff is privileged—
[PETITIONERS’ COUNSEL]: It’s in the—
THE COURT: —to a fair thee well, but if your office doesn’t assert the objection timely or in some reasonable amendment—
[PETITIONERS’ COUNSEL]: Well, it’s asserted in the opposition to plaintiffs’ motion—
THE COURT: That’s not how you do it.
[PETITIONERS’ COUNSEL]: —for sanctions.
THE COURT: You can’t do it that way.
[PETITIONERS’ COUNSEL]: So it was raised at, at that time, Your Honor, and—
THE COURT: Show me where it was asserted in your discovery response and response to the specific discovery request
[PETITIONERS’ COUNSEL]: I don’t have that in front of me, Your Honor.
*561 THE COURT: It’s not there. It’s not there. I know it’s not there. Your office never raised it. You never amended it, never amended it. Motion granted.
[[Image here]]
The colloquy raises two issues regarding Petitioners’ assertion of the deliberative process (executive) privilege over the audio recordings of the Board’s predecisional deliberations and whether the issue is waived. First, the circuit court concluded Petitioners did not raise the deliberative process (executive) privilege over the audiotapes in their response to Respondents’ First Request for Production of Documents, No. 7. The record indicates that, although Petitioners did not raise the deliberative process (executive) privilege specifically over the audiotapes, they did assert in their response to Request No. 7 that “the communications are also being withheld from [Respondents] pursuant to the deliberative privilege since disclosing them would reveal [Petitioners] deliberative, prede-cisional thoughts.” That assertion of the deliberative process (executive) privilege was denied by the circuit court on November 25, 2013 after the court analyzed the parties’ claims pursuant to the Hamilton v. Verdow balancing test, see infra.
Respondents argue that because Petitioners did not include the audiotapes in their response to Request No. 7 and did not produce the audiotapes after the First Motion to Compel was granted on November 25th, the assertion of privilege over the tapes was waived and Petitioners’ should be sanctioned for failing to comply with the November 25th discovery order.[17] *562 This view ignores evidence in the record indicating that the existence of the audiotapes was not discovered until July 29, 2014 when Christine Farrelly testified, during her organizational deposition, that the confidential Board proceedings were recorded. Absent evidence to the contrary, Petitioners could not have raised the deliberative (executive) process privilege over the audiotapes prior to the discovery of their existence in July 2014, and therefore, no abuse of discovery for failing to assert the deliberative process (executive) privilege or produce the audiotapes could have occurred prior to July 2014.
Second, the circuit court acknowledged the possibility the audiotapes were not discovered until after the First Request for Production of Documents was served in August 2013, but concluded that Petitioners failed to timely assert the deliberative process (executive) privilege upon the discovery of the audiotapes. Petitioners argued that they did timely assert the deliberative process (executive) privilege over the audiotapes in their Opposition to Respondents’ Sixth Motion for Sanctions, which was filed on August 22, 2014. The circuit court held that Petitioners’ assertion of the deliberative process (executive) privilege in an opposition to sanctions was improper, and because Petitioners did not assert their privilege in a specific discovery response, the issue was waived. The circuit court did not cite any support for its conclusion that the assertion of a privilege in an opposition to a motion for sanctions is improper.
Maryland Rule 2-402 governs the scope of discovery and explains the process for asserting a privilege against a discovery request. Maryland Rule 2-402(a) states, in relevant part, that “[a] party may obtain discovery regarding any matter that is not privileged ... [.] ” Subsection (e) governs the pro *563 cess for claiming a privilege against discovery, and requires that
[a] party who withholds information on the ground that it is privileged or subject to protection shall describe the nature of the documents, electronically stored information, communications, or things not produced or disclosed in a manner that, without revealing the privileged or protected information, will enable other parties to assess the applicability of the privilege or protection.
Maryland Rule 2-402(e)(l). The Rule does not prescribe any specific method for the party asserting a privilege against discovery to convey the required information to the party requesting the discovery.
Respondents acknowledged in their Reply Memorandum to their Sixth Motion for Sanctions that “Maryland courts have not addressed whether the failure to produce a privilege log results in the waiver of an asserted privilege.” Respondents argue, however, that because Maryland Rule 2—402(e)(1) is similar to the Federal Rule of Civil Procedure 26(b)(5)(A),[18] and there are federal cases that hold the failure to assert a privilege in a privilege log results in a waiver of that privilege, that we should adopt the same rule. This argument ignores the plain language in the very cases relied on by Respondents. In Mezu v. Morgan State Univ., 269 F.R.D. 565 (D. Md. 2010) the federal District Court of Maryland concluded that
[ajbsent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a *564 [FRCP] 34[19] document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.
*565 Id. at 577 (citations omitted) (emphasis added). Additionally, in Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142 (9th Cir. 2005), the United States Court of Appeals for the Ninth Circuit noted that
[FRCP] 26 clarifies that a proper assertion of privilege must be more specific than a generalized, boilerplate objection. However, it does not specifically correlate this requirement with [FRCP] 34⅛ bright-line rule for timeliness, nor does it explicitly articulate a waiver rule.
The advisory committee notes accompanying the addition of the relevant paragraph to Rule 26(b)(5) do suggest a temporal framework for asserting privilege, and also suggest waiver as a possible result of failure to properly provide [FRCP] 26(b)(5) notice. “To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2),[20] and may be viewed as a waiver of the *566 privilege or protection.” [FRCP] 26(b)(5) advisory committee’s note (1993 Amendments). However, the nature of this notice is explicitly left indeterminate.
* ⅜ *
No Circuit has explicitly weighed in on the precise content of [FRCP] 26(b)(5)’s notice requirement, nor on its relationship to [FRCP] 34’s deadline. This circuit has held that a privilege log is sufficient to properly assert the privilege, without explicitly holding that it is necessary to meet those requirements.
⅜ ‡ ⅜
Id. at 1147-48 (citations omitted) (emphasis in original). The Ninth Circuit also held that “boilerplate objections or blanket refusals inserted into a response to a [FRCP] 34 request for production of documents are insufficient to assert a privilege.” Id. at 1149. Neither Court held that a privilege log is the exclusive means for asserting a privilege. Rather, in both cases, the central concern was providing sufficient notice of the privilege to the party seeking the discovery, and that a *567 privilege log satisfied the requirements contained in Rule 26(b)(5). See Mezu, 269 F.R.D. at 577; Burlington N. & Santa Fe Ry. Co., 408 F.8d at 1148.
In the case at bar, Petitioners, in their Opposition to Respondents’ Sixth Motion for Sanctions, stated the “digital recordings of the Board’s closed-session deliberations on adjudicative matters are protected by the deliberative process privilege, the executive privilege, and the attorney-client privilege, as well as § 14-410 of the Health Occupations Article. Contrary to [Respondents’] claims, such recordings are not discoverable.” We conclude this assertion of privilege was sufficient to provide Respondents with notice of the documents and communications that were subject to the deliberative process (executive) privilege and enabled Respondents to assess whether the privilege should apply to those communications. Maryland Rule 2-402(e)(l) requires nothing more. Because Petitioners’ timely asserted their deliberative process (executive) privilege over the audiotapes of their predecisional deliberations on August 22, 2014, we conclude the circuit court erred in holding Petitioners’ privilege was waived.
II. Deliberative Process (Executive) Privilege
In Hamilton v. Verdow, this Court considered whether the deliberative process (executive) privilege applied to an investigative report written by Judge Wilner for the Governor’s Office that plaintiffs sought to obtain through discovery. 287 Md. 544,414 A.2d 914 (1980). This Court determined:
There are two reasons for preserving the confidentiality of intragovernmental documents reflecting advisory opinions, recommendations and deliberations comprising parts of the process by which governmental decisions and policies are formulated: (1) to encourage aides and colleagues to give completely candid advice by reducing the risk that they will be subject to public disclosure, criticism and reprisals; (2) to give the President or other officer the freedom ‘to think out loud,’ which enables him to test ideas and debate policy and personalities uninhibited by the danger that his tenta *568 tive but rejected thoughts will become subjects of public discussion.
287 Md. at 558, 414 A.2d at 922 (citing Archibald Cox, The Executive Privilege, 122 U.Pa.L.Rev. 1883, 1410 (1974)). We noted that the executive privilege “gives a measure of protection to the deliberative and mental process of decision-makers[,]” id. at 561, 414 A.2d at 924, but that the privilege differs from other evidentiary privileges because “[i]t is for the benefit of the public and not the government officials who claim the privilege .... [It] attempts to accommodate the competing interests of a just resolution of legal disputes with the need to protect certain confidential communications.” Id. at 565, 414 A.2d at 924-25 (citations omitted).
Where there has been an allegation of government misconduct, we have held a balancing process must be utilized, “weighing the need for confidentiality against the litigant’s need for disclosure and the impact of nondisclosure upon the fair administration of justice.” Id. at 563, 414 A.2d at 925; see also Ehrlich, 396 Md. at 568, 914 A.2d at 794 (quoting Hamilton for the proposition that “courts have engaged in a balancing process, weighing the need for confidentiality against the litigant’s need for disclosure and the impact of nondisclosure upon the fair administration of justice.”); Office of Governor v. Wash. Post Co., 360 Md. 520, 558, 759 A.2d 249, 270 (2000) (quoting the balancing process espoused in Hamilton). Additionally, this Court has held that when a government official makes a formal claim of executive privilege for confidential communications “of an advisory or deliberative nature, there is a presumptive privilege, with the burden upon those seeking to compel disclosure[ ]” to overcome the presumption. Hamilton, 287 Md. at 563, 414 A.2d at 925 (citations omitted); see also Ehrlich, 396 Md. at 567-68, 914 A.2d at 794 (quoting Hamilton); Office of Governor, 360 Md. at 558, 759 A.2d at 270 (quoting Hamilton); Prince George’s County v. The Wash. Post Co., 149 Md.App. 289, 319, 815 A.2d 859, 876 (2003) (quoting Hamilton).
*569 In weighing Petitioners’ need for confidentiality, we conclude that preventing the disclosure of Petitioners’ pre-decisional deliberations greatly benefits the public by allowing Petitioners to undertake their core public protection function without the constant threat of harassment and intimidation by aggrieved parties. As noted in Hamilton, “it is apparent from the very nature of government that a legitimate necessity exists for the protection from public disclosure of certain types of official information.” 287 Md. at 556, 414 A.2d at 921. The Hamilton Court concluded that “[t]he necessity for some protection from disclosure clearly extends to confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action. A fundamental part of the decisional process is the analysis of different options and alternatives.” Id. at 558, 414 A.2d at 922.
Petitioners were empowered by the General Assembly to, among other things: enforce Title 14 and Title 15 in the Health Occupations Article; oversee the licensing requirements for physicians and allied health professionals; review and preliminarily investigate complaints; develop and implement methods to assess and improve licensee practices and ensure the ongoing competence of licensees; and make recommendations that benefit the health, safety, and welfare of the public. Health Occ. § 14-205(a)(l)(5)(7)(8)(13). The General Assembly also explicitly authorized Petitioners to “issue a cease and desist order or obtain injunctive relief against an individual for...[practicing medicine without a license ....” Health Occ. § 14-206(e)(l).[21] The General Assembly clearly intended to afford Petitioners considerable discretion in carrying out their duties under the Health Occupations Article, including the express authority to issue cease and desist *570 orders. We conclude that Petitioners raised a valid claim of executive privilege that weighs against the disclosure of the audiotapes to Respondents. Respondents, therefore, bear the burden of overcoming the presumption of executive privilege. Respondents, however, failed to provide any substantive argument that states their basis for seeking the disclosure of the audiotapes in litigating their claims of invasion of privacy against Petitioners.
The last consideration the Hamilton balancing process requires is an analysis of the impact that nondisclosure will have on the “fair administration of justice.” 287 Md. at 563, 414 A.2d at 925. Because Respondents have not articulated any specific necessity for access to the audiotapes, the nondisclosure will not impact the fair administration of justice. Therefore, we hold that the audiotapes are protected under the executive privilege and are not discoverable by Respondents.
CONCLUSION
In summary, this Court does not have appellate jurisdiction over Petitioners’ appeal regarding the interlocutory orders denying Petitioners’ motion for reconsideration and motion for a protective order, because neither order independently satisfies the collateral order doctrine. However, we do have appellate jurisdiction over the order granting Respondents’ sixth motion for sanctions because it is a discovery order that denied the assertion of executive privilege to a “high level decision maker.”
We conclude that Petitioners’ assertion of the deliberative process (executive) privilege was not waived because the record indicates the existence of the audiotapes were not discovered until July 2014 and Petitioners timely asserted the deliberative process (executive) privilege over the audiotapes in their Opposition to Respondents Sixth Motion for Sanctions in compliance with the requirements contained in Maryland Rule 2-402(e)(l).
Finally, we hold that because Respondents failed to assert any basis for seeking discovery of the audiotapes, and this Court determined that strong public policy concerns support *571 protecting Petitioners’ deliberative process, the circuit court abused its discretion in granting Respondents sixth motion for sanctions.
MOTION TO DISMISS RELATIVE TO THE DENIAL OF PETITIONERS’ MOTIONS FOR RECONSIDERATION AND FOR PROTECTIVE ORDER GRANTED. ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY GRANTING RESPONDENTS’ SIXTH MOTION FOR SANCTIONS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN PETITIONERS AND RESPONDENTS.
McDonald, J., concurs and dissents.
Adkins, J., dissents

. This opinion will refer to all three individuals collectively as "Respondents” or individually where needed.

. References to "Petitioners” include the Maryland Board of Physicians (the "Board”), and the individual Board members, staff, and the administrative prosecutor who make up the twenty-five co-defendants in this case. The parties will be referenced individually where appropriate.

. Lupron is an FDA-approved drug used for the treatment of precocious puberty, a condition where girls under the age of eight have changes in breast development or pubic hair and boys under the age of nine have penile and scrotal changes and pubic hair. Lupron can reduce the symptoms of puberty in children with higher than normal levels of testosterone. The reduction of testosterone can decrease aggressive, hyperactive and hypersexual behaviors. See Geier v. Md. State Bd. of Physicians, 223 Md.App. 404, 413 n. 3, 116 A.3d 1026, 1031 n. 3 (2015).

. In addition to prescribing Lupron, Dr. Geier also prescribed chelation therapy to patients, a treatment that involves the use of certain chemicals to remove heavy metals from the body. In medicine, chelation has been used for the treatment of metal poisoning, among other conditions. See Questions and Answers on Unapproved Chelation Products, http://perma.cc/C25M-269H (last accessed November 18, 2016). Dr. Geier prescribed two types of drugs in his chelation therapy, DMSA (dimercaptosuccinic acid), which is approved by the FDA for removing severe levels of heavy metals from the body, and DMPS (2, 3-dimercap-to-l-propane-sulfonic acid), which is not approved by the FDA for any purpose. See Geier, 223 Md.App. at 420, 116 A,3d at 1036.

. The AU did not consider Petitioners’ amended charges during the hearing because the charges were amended subsequently.

. Specifically, Health Occ. § 14-404(a)(3)(ii), § 14-404(a)(ll), § 14-404(a)(22), and § 14-404(a)(40). The ALG dismissed Health Occ. § 14— 404(a)(12), § 14—404(a)(l 8), and § 14-404(a)(19).

. The record does not reflect that Mr. Geier has ever been a physician.

. This Court declines to reproduce the confidential medical information that was included in the cease and desist letter. Rather, we simply note that the information was highly personal, and not information that a reasonable person would want disseminated to the public.

. On May 1, 2014, Respondents filed their third motion to compel seeking two classes of documents: (1) the Board’s administrative investigatory file in its disciplinary proceedings against Dr. Geier’s partner, John L. Young, M.D., and (2) communications between the Board’s attorneys and Petitioner Shafer, an investigator for the Board. Respondents argued that Petitioners proceeded against Dr. Young as part of their campaign to discredit Dr. Geier’s research. Petitioners opposed the production of the deliberations regarding Dr, Young based on deliberative privilege, attorney-client privilege, attorney work-product protection, and Health Occ. § 14—410(a)( 1), which states that generally, "[t]he proceedings, records, or files of, the Board a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence[.]” Following a hearing on June 17, 2014, the circuit court granted Respondents motion and compelled disclosure of the requested documents. On June 26, 2014, Petitioners noted an appeal.

. Respondents’ fifth motion for sanctions was received by the circuit court on August 8, 2014, but due to a clerical omission, was not filed with the court until August 15th.

. Health Occ. § 14-410 provides, in relevant part:
(a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:
*541 (1) The proceedings, records, or files of the Board, or a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible evidence; and
(2) Any order passed by the Board or disciplinary panel is not admissible evidenced]
(b) This section does not apply to a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel.

. Dr. Young was a partner in Dr. Geier’s medical practice.

. Respondents also filed a fourth motion for sanctions on the same date.

. The circuit court noted the statutory scheme remained in full effect even after this Court established an absolute quasi-judicial privilege in Gersh v. Ambrose, 291 Md. 188, 434 A.2d 547 (1981).

. Cts. & Jud. Proc. § 3-2A-07(a) authorizes an arbitration panel, upon a finding that the conduct of any party was in bad faith or without substantial justification, to require "the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and reasonable expenses, including reasonable attorney’s fees, incurred by the adverse party in opposing it.” Maryland Rule 1-341 states that "if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court, [on motion by an adverse party,] may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.”

. Petitioners, in their response to Respondents’ motion to dismiss, rely on Gill v. Ripley as evidence that this Court has recognized that absolute quasi-judicial privilege applies to Executive Branch officials engaged in quasi-judicial acts "because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too ‘exercise a discretionary judgment’ as part of their function.” 352 Md. 754, 762, 724 A.2d 88, 92 (1999). The case that Petitioners cite predated our holding in Dawkins. Because this Court finds that Dawkins' limitation on appealing orders denying judicial immunity claims from agencies is controlling, we decline to consider the holding in Gill v. Ripley in the context of this case.

. Respondents also argue that they made subsequent discovery requests that also covered the disclosure of the audiotapes. Specifically, Respondents note that in their Third Request for Production of Documents, they sought production of "documents constituting written/or electronic communication between any members of [the Board] and regarding Mary Geier and/or David Geier.” Additionally, in their Fifth Request for Production of Documents, Respondents sought production of: (1) “[a]ny documents or communications (including electronic data) pertaining to the Cease and Desist Order and/or Amended Cease and Desist Order (that have not already been produced)[;]” and (2) "[documents, notes, or communications (including electronic data) of any [Board] Staff or [Petitioner] concerning or referencing any information *562 in the Cease and Desist Order, or the medications, and medical conditions of the Geiers (that have not already been produced).” The record indicates the Third Request for Production of Documents was served on December 27, 2013 and the Fifth Request for Production of Documents was served on February 27, 2014, but the audiotapes were not discovered until July 2014, meaning they could not have been subject to these other discovery requests until their existence was discovered.

. Federal Rule of Civil Procedure 26(b)(5)(A) states:
(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that Ihe information is privileged or subject to protection as trial-preparation material, the party must:
(i) Expressly make the claim; and
(ii) Describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
[[Image here]]

. FRCP 34 states:
(a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party’s possession, custody, or control:
(A) any designated documents or electronically stored information— including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
(B) any designated tangible things; or
(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.
(b) Procedure.
(1) Contents of the Request. The request;
(A) must describe with reasonable particularity each item or category of items to be inspected;
(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and
(C) May specify the form or forms in which electronically stored information is to be produced.
(2) Responses and Objections.
(A) Time to Respond. The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties’ first Rule 26(f) conference. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.
(B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.
(C) Objections. An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.
(D) Responding to a Request for Production of Electronically Stored Information. The response may state an objection to a requested form for producing electronically stored information. If the re *565 sponding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use.
(E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
(1) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
(iii) A party need not produce the same electronically stored information in more than one form.
(c) Nonparties. As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

. FRCP 37(b)(2) states:
(2) Sanctions Sought in the District Where the Action Is Pending.
(A) For Not Obeying a Discovery Order. If a party or a party’s officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
*566 (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
(B) For Not Producing a Person for Examination. If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.
(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney’s fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust,

. COMAR 10.32.02.06(B)(2) (as effectuated at the time Petitioners published the cease and desist order) states, ‘‘[d]uring the course of the investigation of the complaint, the Board may issue a nonpublic cease and desist order. At the conclusion of an evidentiary hearing, the administrative law judge may recommend a public cease and desist order in addition to a penalty.”